Marie V. DAVIS, Petitioner,

v.

Kathryn Anne JONES et al., Respondents.

No. C–364.

Supreme Court of Texas.

Jan. 6, 1982.

E. W. Newman, Houston, for petitioner.

M. W. Plummer, Houston, for respondents.

GREENHILL, Chief Justice.

At issue is whether an illegitimate daughter and an illegitimate grandson, in the absence of a will, may inherit from their father and grandfather respectively under a Texas statute.

The trial court held that they could not. The court of civil appeals reversed the judgment of the trial court. 616 S.W.2d 276. It held that the statute was unconstitutional under opinions of the Supreme Court of the United States. We do not so read those opinions. Accordingly, we reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

Warren Davis Sr. was married to Marie Davis. In 1942, Warren Sr. is alleged to have had a child by Ruth Lockett. The child is Kathryn Anne Jones [Kathryn]. Warren Sr. did not marry Ruth Lockett; and while there is some deposition testimony from a third party that Warren Sr. identified Kathryn Anne as his daughter, there was no official legitimation of her. She is now divorced and works in California.

Warren Sr. and his wife Marie had a son, Warren Davis Jr. Warren Jr. did not marry. He is alleged to have had a son, Craig Faultry, by a woman whose name does not appear in the record. Warren Jr. was killed in 1960 in an accident a month before Craig was born. There is nothing in the record to show that Warren Jr. knew that he was to have a son. He, obviously, could not have taken steps to have legitimatized the child after his birth because Warren Jr. died before the child's birth.

Neither Warren Sr. nor Warren Jr. left a will. Apparently Warren Jr. left no estate. The claims that are made by Kathryn and Craig are against the estate of Warren Sr. who died in July of 1978. Upon his death, his wife, Marie, became administratrix of the estate.

Kathryn and Craig filed a petition in Probate Court Number One of Harris County to determine the heirship of Warren Davis Sr. Marie Davis, the administratrix, and the wife of Warren Sr., denied the allegations of Kathryn and Craig, and moved for summary judgment.

Counsel for Kathryn and Craig filed an unsworn answer to the motion. It quotes from a deposition, not contained in the record, given by Joyce Johnson. Ms. Johnson says that Warren Sr. described his relationship with Craig as that of grandson. As to Kathryn, Ms. Johnson said that in 1965, Warren Sr. introduced Kathryn to her as his daughter. The daughter was then in her late twenties. Ms. Johnson had a picture of Warren Sr. and Kathryn. She also had two letters in which Warren Sr. referred to Kathryn as "my daughter," and "my baby" [who is] "19 years old [and] is getting pretty matured." Ms. Johnson identified the handwriting as being that of Warren Davis Sr. No signature is shown on one of the letters. Apparently the end of this letter was not "introduced" at the deposition of Ms. Johnson. Kathryn stated in her answers to interrogatories that her mother had told her that Warren Sr. was her father. She also stated that he had "recognized" her as his daughter. We shall assume that all of this is admissible at the summary judgment hearing. There is no statement from Craig Faultry in the record. Nor are there statements from the mothers of Kathryn or Craig Faultry.

### The Texas Statutes

Before 1977, an illegitimate child could inherit, under the Texas statute, only from the mother. Warren Jr. died in 1960.

We can only guess what the Supreme Court of the United States would have held around 1960 as to the constitutionality of the then Texas statute, if a claim had been made on behalf of Craig against the estate of Warren Jr. No such claim was, or is, made. In 1971, that court upheld a Louisiana statute which, under the facts, did not permit inheritance by an illegitimate child from the father. Four justices dissented. *Labine v. Vincent*, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288.[1]

The Texas Legislature was in session in 1977 when the Supreme Court handed down *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (April, 1977). *Trimble* is discussed later herein. It invalidated an Illinois statute. The Legislature, in 1977, amended Section 42 of our Probate Code to provide for alternate methods of making children legitimate.[2] The statute was amended again in 1979;[3] but since Warren Sr. died in 1978, we are concerned with the constitutionality of the 1977 statute. We refer to it as Section 42.

Section 42 provided in section (a) that an illegitimate child would inherit from the mother and her maternal kindred, including ascendants.

Section (b) provided that if the father and the mother married, the child would be legitimated. The child would then also inherit from the father and the paternal kindred, including ascendants.

Section (c) provided for voluntary legitimation proceedings under which the child would inherit from the father but *not* from his paternal kindred; i.e., not from his grandfather. The Section reads:

(c) *Legitimation by Voluntary Legitimation Proceeding.* Where a man, having by a woman a child shall afterwards legitimate the child pursuant to a voluntary legitimation proceeding under Chap-

1. The Supreme Court, as constituted in 1977, would probably have held the pre-1977 statute unconstitutional. *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31. We can only speculate as to whether that court in 1978 would have given, or will now give, *Trimble* retroactive effect. *Lalli v. Lalli*, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978).

2. Senate Bill 53, Chapter 290, Acts 65th Legislature, 1977, page 762, had a companion bill, House Bill 222 by Representative Sarah Weddington. The two are substantially the same. We find no bill analysis of the Senate Bill, but the analysis of House Bill 222 reads in part:

*Background Information:*

The intent of Family Code revisions dealing with legitimation of children was to equalize the status of legitimated children and legitimate children. Because of oversight, however, inheritance rights under the Probate Code were not amended to equalize the rights of the two groups of children. Since illegitimate children who have been legitimated have the same status as legitimate children for other purposes, it is inequitable to deny the legitimated child equal inheritance rights.

*Purpose:*

H.B. 222 allows the child who has been legitimated by subsequent marriage or by voluntary legitimation under Chapter 13 of the Family Code to inherit from his father as does a legitimate child. The father of such a child may inherit from the child.

*Section-by-Section Analysis* [as relevant here]:

Section 1. Amends Sec. 42 of the Probate Code as follows:

....

(b) When a child is legitimated by the subsequent marriage of his mother and father, the child shall inherit from his father and the father's kin and they may inherit from the child and his issue. Presently, the child legitimated by marriage may inherit from his father but not the father's kin.

(c) A child legitimated by voluntary legitimation proceedings shall inherit from the father but not from the father's kin, and the father, but not his kin, may inherit from the child. Current law makes no provision for inheritance by a child legitimated under Chapter 13 of the Family Code.

3. The 1979 amendment to Section 42 provides that upon execution of a statement of paternity as provided in the Family Code, or a like statement in another jurisdiction, the child shall inherit from his father and his paternal kindred, ascending and descending. Acts 66th Legislature, 1979, page 1740, being Chapter 713, House Bill 329.

Statutory references, unless otherwise indicated, are to Vernon's Texas Civil Statutes Annotated, Probate Code, § 42.

ter 13, Family Code, such child and his issue shall inherit from his father but not from his paternal kindred; and the father, but not the father's kindred, shall inherit from such child and his issue.

Section (d) provided that where there was a marriage, or if the child was legitimatized, the child would be considered legitimate for purposes of homestead, exempt property, and family allowances.

Section (e) provided that the issue of marriages deemed null in law should nevertheless be legitimate.

### Decisions of the Supreme Court

Discussion of the decisions of the U. S. Supreme Court in *Labine*, and cases coming after it, is difficult because the members of that court are sharply divided, usually five to four. There are many separate opinions of the justices.

The conflicting considerations are (1) on the side of the child, the equal protection clause and invidious discrimination; and (2) on the side of the state, its legitimate purpose in the orderly disposition and settlement of estates, the integrity of the family unit, and encouraging legitimate family relationships. Of these, the "just and orderly disposition of property at death" was regarded as most persuasive. The difficulty of proof of paternity was a major problem, but it was not regarded as insurmountable.

The facts of the three Supreme Court cases appeared to play a major role in the decisions. Each dealt with relationships between an alleged father and his child. None dealt with grandparents.

In *Labine*, an illegitimate child in Louisiana made a claim against his father's estate. The father left no will. The father and the mother of the child, who did not marry, had appeared before a state agency of Louisiana. The father formally acknowledged that the child was his. That, under Louisiana law, did not entitle the child to inherit from the father. A statute provided that "[i]llegitimate children, though duly acknowledged, cannot claim the rights of the legitimate child." The exception was

that if the father, who acknowledged the child, left no wife or other kin, then the child would inherit instead of there being an escheat to the State.

The statutes of Louisiana provided for forced heirship among legitimate members of a family. Laws also required support among members of the family. Illegitimate children could be adopted, but there was no adoption in *Labine*.

The opinion in *Labine* by Mr. Justice Black upheld the Louisiana law. The emphasis was on the state legislature's power "to make rules to establish, protect, and strengthen family life as well as to regulate the disposition of property . . . ."

While the court indicated that it did not necessarily agree with the statutory scheme, it found nothing in the Fourteenth Amendment which would invalidate the statutes. Mr. Justice Black wrote, "[a]bsent a specific constitutional guarantee, it is for the legislature, not life-tenured judges of this Court, to select from among possible laws."

Mr. Justice Harlan concurred: "With all respect to my dissenting Brethren, I deem little short of frivolous the contention that the Equal Protection Clause prohibits enforcement of marital obligations . . . ."

Mr. Justice Brennan, for himself and Justices Douglas, White, and Marshall, strongly dissented. Emphasis was placed on the [official] public acknowledgment of the child, and that it was "the prejudice of bygone centuries" which punished the hapless and innocent illegitimate children.

Taking exception to the reference to actions of "life-tenured judges," who had therefore been courageous in the field of equal protection, the dissent found no reasonable basis for the invidious discrimination against illegitimates.

The Supreme Court had the matter again in 1977 in *Trimble*. As in *Labine*, there had been formal state action in Illinois which determined the child was the daughter of the father. A court had entered a paternity order which required the father to pay support for the illegitimate daughter.

The Illinois statute authorized inheritance if the parents married *and* [not *or*] the father acknowledged that the child was his. The Illinois Supreme Court had upheld its statute on two grounds. The first basis was the promotion of legitimate family relationships. Mr. Justice Powell opened the court's opinion by saying that, "[a]lthough the [Supreme] court noted that this justification [for the statute] had been accepted in *Labine*, the opinion [of Mr. Justice Black] contains only the most perfunctory analysis."

The second basis for the holding of the Illinois court was orderly establishment of a method of transmitting property on death when there is not a will. The Supreme Court recognized such a genuine state interest, but felt that there must be alternate methods for legitimating the child without jeopardizing the orderly settlement of estates.

The only method offered by Illinois was marriage *and* acknowledgment. The barrier was "insurmountable." In this, the court found the statute to be flawed. The holding was that there was no rational basis for the statute, it constituted invidious discrimination between illegitimate and legitimate children, and it violated the Fourteenth Amendment.

Mr. Justice Rehnquist, for himself, the Chief Justice and Justices Stewart and Blackmun, strongly dissented on the basis of *Labine* and what the dissent considered the true intent of the Fourteenth Amendment to be: "The Equal Protection Clause is itself a classic paradox, and makes sense only in the context of a recently fought Civil War."

The court's opinion had expressed difficulty in its judicial task in deciding *Trimble*. Mr. Justice Rehnquist wrote that "the 'difficulty' of the 'judicial task' is ... a self-imposed one, stemming not from the Equal Protection Clause but from the Court's insistence on reading so much into it."

In 1978, the Supreme Court again considered the subject in *Lalli v. Lalli*, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503. Indicating the division among the justices, there are five opinions in *Lalli*. The plurality opinion is by Mr. Justice Powell for himself, the Chief Justice, and Mr. Justice Stewart. There are separate concurring opinions by Justices Stewart, Rehnquist and Blackmun. The dissent is by Mr. Justice Brennan for himself and Justices White, Marshall and Stevens.

In *Lalli*, a claim was made for an illegitimate son. There was no will, no marriage between the alleged parents, and no adoption. The father had executed an instrument which gave his formal consent to the marriage of Robert Lalli "who is my son who is under the age of 21 years ...."

The New York statute under attack required, in the absence of a marriage, formal proof of paternity. Legitimate children were not subject to the same requirement. The statute provided:

An illegitimate child is the legitimate child of his father so that he and his issue inherit from his father if a court of competent jurisdiction has, during the lifetime of the father, made an order of filiation declaring paternity in a proceeding instituted during the pregnancy of the mother or within two years from the birth of the child."

The Court of Appeals of New York had upheld the statute. The case was in the Supreme Court while it was considering *Trimble*. The Supreme Court returned the case to the New York court for further consideration in the light of *Trimble*. The New York court again upheld the statute, and the case returned to the Supreme Court. This time, the Supreme Court upheld the constitutionality of the statute.

First, the Supreme Court held that the consent to marry, formally executed by the father, and which referred to the child as "my son," did not constitute a formal acknowledgment of the child. This is explained in footnote 11 of the plurality opinion.

Second, the opinion found reasonable alternatives to legitimatize a child. It distinguished the *Trimble* case because Illinois required both formal recognition of the child *and* marriage.

The *Lalli* opinion, while scholarly, is detailed and may not be briefly summarized here. As we understand it, the legitimate state interest is the just and orderly disposition of property at death. A major consideration was a balancing between (1) reasonable alternatives for legitimation which were not unduly burdensome, (2) the disruptive effect of later challenges against estates. The difficulty of securing evidence of paternity was a major consideration. The court found reasonable the institution of suit during the lifetime of the father.[4] The court found it unnecessary to pass on the two year statute of limitations.

Mr. Justice Blackmun, in concurring, stated that he would overrule *Trimble*. He wrote that, "I therefore must regard Trimble as a derelict, explainable only because of the overtones of appealing facts . . . ." He regarded the court as returning to *Labine*.

While Mr. Justice Stewart, in concurring, did not agree that *Trimble* was a derelict, he found significant differences between the New York and Illinois statutes. He agreed with Mr. Justice Powell's "convincing" opinion.

Mr. Justice Rehnquist concurred for reasons stated in his dissent in *Trimble*.

Mr. Justice Brennan's dissent, joined by Justices Marshall, White, and Stevens, again found invidious discrimination against illegitimate children. The dissent emphasized the formal recognition of the illegitimate children in each of the cases which had been before the court: "[T]he fear that unknown illegitimates might assert belated claims hardly justifies cutting off the rights of known illegitimates such as Robert Lalli." The dissent would not have retreated from *Trimble*.

*Parham v. Hughes*, 441 U.S. 347, 99 S.Ct. 1742, 60 L.Ed.2d 269 (1979) discussed the above cases, but the emphasis was on another basis; i.e., discrimination because of sex.

In *Parham*, the father of an illegitimate child brought an action for the wrongful death of his son. The father had signed the child's birth certificate and had contributed to his support.

The mother could have brought an action without complying with the Georgia statutes dealing with legitimation by the father. In a five to four decision, the Supreme Court upheld the Georgia statute which barred the father from suing for the wrongful death of the child.

The court stated that Georgia had provided an unburdensome way for the father to have legitimated the child, but he had not done so. The statutory scheme, therefore, was not unreasonable. The court recognized that a defendant might be faced with the possibility of multiple lawsuits by persons all claiming to be the father.

The dissent found invidious discrimination against unmarried fathers as opposed to unmarried mothers. It emphasized that there was room for very little doubt about Parham's being the father.

These cases have been reviewed at length because we felt it necessary to determine the constitutionality of the Texas statute. We hold that it is constitutional in the light of the *Lalli* case and its interpretation of the *Trimble* opinion in particular.

The claim is against the estate of an alleged grandfather, Warren Sr., who died in 1978, at a time when there were alternatives to legitimation less stringent than those of the New York statute as to legitimation. The New York statute, enacted after the Bennett Commission's recommendations, provided that an illegitimate child should "inherit from *his father*" (emphasis ours) if there were an order of filiation. *See* footnote 2 to *Lalli*, 439 U.S. at 261, 99 S.Ct. at 521. The 1977 Texas statute was enacted after *Trimble* and, presumably, in the light of its teachings.

While in a summary judgment proceeding the burden of proof is on the movant [the administratrix], it must be noted that in each of the cases by the Supreme Court,

---

4. The Supreme Court noted that the New York statute had been enacted after a careful study by the "Bennett Commission."

there was strong evidence of paternity: a court decree that the "father" support the child, the signing of a birth certificate and the furnishing of support, the formal consent of "my son" to marry, the formal acknowledgment of the child for purposes of support, and the like.

As to Kathryn Jones and Craig Faultry, there are only some oral statements to a third party and letters to Kathryn in which Warren Davis Sr. recognized Kathryn and Craig as his daughter and his grandson respectively. These circumstances are not as strong as the facts alluded to in footnote 11 in the opinion of Mr. Justice Powell in *Lalli*, referred to above, where the father referred to "my son" in giving consent to his marriage.

Craig Faultry goes through the step of legitimation by his father. His claim is against the estate of his grandfather. The mother of Craig Faultry is not identified in the record. The state has provided no method, other than adoption, for legitimating grandchildren, great grandchildren, or great great grandchildren. And at the time of the death of his father in 1960, there were not "suitable alternatives" under *Trimble*. This does not lead us, however, to declaring the 1977 Texas statute unconstitutional,—the statute in force when the suit was brought.

As stated, the cases before the Supreme Court dealt only with first generation illegitimates,—father and son. The problems in first generation illegitimacy are magnified many times when the claim is of second, third or fourth generation illegitimacy. The Legislature may have considered that the settlement of estates of grandparents or great grandparents of a large family would be difficult where there are claims of illegitimates known or unknown.

As said by the United States Supreme Court, the wisdom or desirability of the statute is not for us to decide. The basis for the decision is whether there is a rational state interest to support the legislation,—whether there is a rational state basis for it. We believe that there is.

In the light of all the considerations expressed in the opinions of the Supreme Court, and the summary judgment proof in the record, we conclude that the trial court properly entered judgment for the administratrix, the widow of Warren Davis Sr.

The judgment of the court of civil appeals is reversed, and the judgment of the trial court is affirmed.