Delynda Ann Ricker Barker
REED, Appellant,

v.

Princess Ann Ricker CAMPBELL, Individually and as Administratrix of the Estate of Prince Ricker, deceased, Appellee.

No. 08–83–00022–CV.

Court of Appeals of Texas,
El Paso.

Dec. 19, 1984.

Rehearing Denied Jan. 23, 1985.

R. Stephen McNally, Austin, for appellant.

Paul McCollum, Kathleen McCulloch, Shafer, Gilliland, Davis, McCollum & Ashley, Odessa, for appellee.

Before WARD, OSBORN and SCHULTE, JJ.

## OPINION

WARD, Justice.

The Plaintiff Delynda Ann Ricker Barker Reed appeals from a take-nothing judgment rendered against her in her suit to establish a share in the estate of her natural father Prince Ricker. Prince Ricker died intestate and the Defendant Princess Ann Ricker Campbell, a legitimate child, was appointed administratrix of the estate. Trial was to a jury which found that the Plaintiff was Prince's child but that her mother was never validly married to Prince. We will affirm the judgment of the trial court.

Prince Ricker and Alice Rosemary Lawson married in 1954. Two daughters were born of this marriage, Princess Ann and Rosemary Jane. Alice Rosemary left Prince Ricker in September, 1957. The Plaintiff's mother, Annabel Boutwell, claimed that she and Prince Ricker were ceremonially married in Juarez, Mexico, on November 24 or 27, 1957, but it was not until February 28, 1958, that a divorce dissolved Ricker's first marriage to Alice Rosemary. Four days before the Plaintiff's birth, Annabel Boutwell changed her last name to Ricker. The Plaintiff was born on November 1, 1958, and her mother then married Jerry Barker in February, 1959. He later adopted the Plaintiff. On October 20, 1958, Prince Ricker married Jeri Laverne, which marriage was dissolved by divorce in January, 1960. In April, 1960, Prince Ricker married Marilyn Watts and their marriage lasted until 1967. Three children were born of this marriage, they being Prince Jr., Brett and Mark.

Prince Ricker was a chronic alcoholic with associated mental problems and was judicially declared non compos mentis in July, 1968. He died intestate on December 22, 1976, and the Defendant was appointed administratrix of his estate.

The Plaintiff filed her application to determine heirship in February, 1979. The Plaintiff contended that she was the legitimate child of Prince Ricker and was entitled to inherit from his estate. She alleged that upon the removal of the preexisting impediment to the marriage of Prince Ricker and her mother, which was his divorce in February, 1958, from Alice Rosemary, the relationship between Prince and the Plaintiff's mother became a putative or common-law marriage.

The Defendant contends that any relationship between the Plaintiff's mother and Prince was merely meretricious, being no marriage at all, and any relationship they may have had did not ripen into a putative or common-law relationship when Prince

Ricker and Alice Rosemary Lawson divorced. The Defendant and the four other children of Ricker's valid marriages claimed to be Ricker's only heirs at law.

By their answers to the Special Issues submitted, the jury determined:

1. The Plaintiff was a child of Prince Ricker.

2. Ricker and Boutwell did enter into a ceremonial marriage on November 24 or 27, 1957.

3. On November 24 or 27, 1957, Ricker and Boutwell did agree to be husband and wife.

4. The jury failed to find that Boutwell and Ricker did live together as husband and wife on or after the 24th or 27th of November, 1957 until June, 1958.

5. The jury failed to find that Boutwell and Ricker did hold themselves out to the public as husband and wife until June, 1958.

6. This issue asked if on November 24 or 27, 1957, Boutwell believed Ricker to be unmarried, and the jury answered "She Believed He Was Married."

As previously stated, the trial court received the jury's verdict and based thereon entered a take-nothing judgment against the Plaintiff.

Recent developments in the inheritance rights of illegitimate children have been well documented in cases pertinent to this appeal such as *Batchelor v. Batchelor*, 634 S.W.2d 71 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.); *Johnson v. Mariscal*, 620 S.W.2d 905 (Tex.Civ.App.—Corpus Christi 1981), *writ ref'd n.r.e.*, 626 S.W.2d 737, (Tex.1982), *cert denied*, 458 U.S. 1112, 73 L.Ed.2d 1375, 102 S.Ct. 3496 (1982); *Winn v. Lackey*, 618 S.W.2d 910 (Tex.Civ.App.—Eastland 1981, no writ) and *Bell v. Hinkle*, 607 S.W.2d 936 (Tex.Civ.App.—Houston [14th Dist.] 1980), *cert denied*, 454 U.S. 826, 70 L.Ed.2d 100, 102 S.Ct. 115 (1981). In 1955, and again in 1977, the Texas Legislature provided that while illegitimate children could inherit from their mothers under the laws of descent and distribution, they had no right to inherit from their father. That situation changed, however, with the passage by the Legislature in 1979 of Section 42(b) of the Texas Probate Code, effective August 27, 1979. An illegitimate child can now inherit from his father under three circumstances:

1. If he is born or conceived before or during the marriage of his father and mother;

2. If he is legitimized by court decree as provided in Chapter 13 of the Family Code; or

3. If the father has executed a statement of paternity as provided in Section 13.22 of the Family Code or a like statement properly executed in another jurisdiction.

Chapter 13 of the Family Code provides for a regular procedure through which a child may obtain a decree designating the alleged father as the father of the child in order to create a parent-child relationship. This may be an involuntary procedure pursuant to Sections 13.01 through 13.09, or it may be a voluntary legitimation pursuant to Section 13.21. If neither of these procedures is followed, a child may still be legitimated for the purposes of inheritance if the father has executed a written statement of paternity pursuant to Section 13.22 of the Family Code.

■ The Plaintiff's first point argues that the Plaintiff was entitled to inherit from her father since the evidence conclusively established as a matter of law that the father recognized her as his child. To the extent that this point presents the argument that the evidence conclusively established that the father recognized the Plaintiff as his child, it will be overruled since the evidence was hotly contested on this issue. The instances of recognition by the father of the child are opposed in the main by the strong evidence of the deteriorated mental condition of the father during each occurrence as well as positive occurrences of nonrecognition. Considering only the evidence and the inferences arising therefrom that support the implied

finding of the court on nonrecognition, the argument is overruled.

■ Since the evidence on recognition was disputed, the argument fails for the additional reason that the Plaintiff secured no finding on recognition. The issue was not requested. The matter has been waived. Rule 279, Tex.R.Civ.P.

■ Finally and regardless of the above, the Plaintiff still would not inherit as a "recognized" illegitimate child since Section 42(b) of the Probate Code provides the only methods by which an illegitimate child may inherit from her father. Being a "recognized" illegitimate is not one of them. *Bell v. Hinkle, supra; Batchelor v. Batchelor, supra; Mills v. Edwards,* 665 S.W.2d 153 (Tex.App.—Houston [1st Dist.] 1984, no writ). *Johnson v. Meriscal, supra,* held to the contrary, but the Supreme Court at 626 S.W.2d 737, expressed no opinion on that ruling and refused both applications for writ of error.

*Mills v. Edwards, supra,* is the last case to have passed on the "recognition" ground and it too held that Section 42(b) provides the only methods by which an illegitimate child may inherit from her father. Being a "recognized" illegitimate is not one of them. The first point is overruled.

■ The second point advances the same complaint as the first point except that it is in terms of great weight and preponderance of the evidence terminology. The point is overruled.

■ The third point is that the Plaintiff is entitled to inherit since to provide otherwise would be unconstitutional under the Equal Protection clauses of the State and Federal Constitutions. Under the rule of *Winn v. Lackey, supra,* and the out-of-state cases cited therein, the equal protection argument fails as *Trimble v. Gordon,* 430 U.S. 762, 52 L.Ed.2d 31, 97 S.Ct. 1459 (1977), has not been applied retroactively where the father died before the case came down and suit was filed afterwards. Even if the Plaintiff could claim under Section 42(b) as amended, her exclusion from the inheritance under that statute does not deny her constitutional equal protection since a rational state basis supports that legislation. *Davis v. Jones,* 626 S.W.2d 303 (Tex.1982); *Mills v. Edwards, supra.* The point is overruled.

■ A series of as a matter of law and great weight and preponderance of the evidence points attack the jury findings to Special Issue Nos. Four, Five and Six. In reviewing the record on the "as a matter of law" points, this Court must consider only the evidence and reasonable inferences arising therefrom which support the jury findings and must disregard all the evidence and inferences to the contrary. *Estate of Claveria v. Claveria,* 615 S.W.2d 164 (Tex.1981).

In regard to the claim of a good faith marriage by Annabel Boutwell, she admitted that as late as the summer of 1957, she knew of the common knowledge in the community where she lived that Prince Ricker was still married to Rosemary Lawson and as late as October, 1957, she did not know whether or not his divorce was final. She took no action to find out although the courthouse where the divorce had been filed was only two blocks from where she lived.

Annabel Boutwell testifies she and Ricker were ceremoniously married in Juarez, but she did not know any of the witnesses present and claims she lost the marriage certificate evidencing the alleged marriage. Defendant's Exhibit No. 31, consisting of two certificates of non-existence of records from Mexico, showed that the civil registries showed no marriage of Prince Ricker and Annabel Boutwell from January, 1957, to December, 1959, in the Mexican registries. Further, witness Trejo, an attorney from Juarez, Mexico, testified that Mexican law requires all marriage ceremonies to be performed by the civil registry judge and that all such ceremonies be recorded in the civil registry of the district. Further, Annabel Boutwell testified that from the time of the purported marriage until she and Prince Ricker ended their relationship in June, 1958, she continued to live with her

mother in Big Springs and Ricker kept his residence in Stanton, Texas, where he was teaching school.

No documentary evidence was introduced to substantiate the claims that they held themselves out to the public as husband and wife, although Annabel testified that they made several trips to Austin, San Antonio, San Angelo and Midland and registered at the hotels as Mr. and Mrs. Prince Ricker. She admitted that she never filed a petition for divorce from him, and a teaching associate of Ricker's testified that a search of the school records did not reflect whether Ricker was or was not married. He testified that he was under the impression that Ricker was single because he never mentioned a family. Annabel Boutwell never filed suit for child support nor did she ever attempt to establish the paternity of Prince Ricker during his lifetime.

Ricker told his last wife Marilyn Watts in the presence of his father that he never married Annabel Boutwell.

▮ Thelma Barham, the mother of Rosemary Lawson Ricker, testified that she lived in Big Springs where Annabel Boutwell lived and she had at no time heard of any claim made by Annabel Boutwell that she was the wife of Prince Ricker. The "as a matter of law" points are overruled.

In reviewing the great weight and preponderance of the evidence points, we have considered all of the evidence. While the Plaintiff introduced evidence sufficient to support her contentions in regard to the challenged jury findings, we are of the opinion that the great weight and preponderance of the evidence points should likewise be overruled.

Based on the above, we therefore overrule Points of Error Nos. Four, Five, Seven, Eight, Nine, Ten, Eleven, Twelve and Thirteen.

▮ The final point to be considered is Point of Error No. Six which complains of the action of the trial court in excluding certain testimony offered by Annabel Bout-

well that she had been told by Prince Ricker and by his first wife Alice Rosemary Lawson that Ricker was single at the time of the Juarez marriage. At the time that the offer was made as to a statement made by Alice Rosemary Lawson, the trial court first sustained the Defendant's objection and then overruled the Defendant's objection, and no further testimony was offered by the Plaintiff as to what the first wife had told her. At a later point, Annabel Boutwell began to testify as to what Ricker may have told her about his marriage status and the trial court then sustained the Defendant's objections stating that he had previously sustained the Defendant's objection as to what the first wife had told her and that he would sustain the Defendant's same objection as to what Ricker told her of his marriage relationship. Regardless of this testimonial confusion regarding the two offers of testimony, no bill of exceptions on the excluded testimony was tendered by the Plaintiff on what either of the two people told Annabel Boutwell. The Plaintiff has failed to preserve any error. The point is overruled.

We have examined all of the Plaintiff's points and they are all overruled. The judgment of the trial court is affirmed.