**Lois Walton HENSON, et al.,
Appellants,**

**v.**

**LePaula Lang JARMON, et
al., Appellees.**

**No. 12–88–00046–CV.**

Court of Appeals of Texas,
Tyler.

Aug. 31, 1988.

---

Thomas G. Nash, Jr., Dallas, for appellants.

Chris Jackson, Wade Bingaman, Jackson, Bingaman & Dufour, Austin, Ben C. Martin, Joe Hill Jones, R. Guy Carter, Dallas, for appellees.

Before SUMMERS, C.J., and BILL BASS and COLLEY, JJ.

BILL BASS, Justice.

This is an appeal from a judgment declaring the decedent's two illegitimate daughters the sole heirs of his estate. The jury found that the appellees, LePaula Long Jarmon and Nikita Denise Rogers, were the biological daughters of the decedent, LePort Walton. The appellants, the intestate heirs of the decedent, appealed from this judgment contending that the trial court erred in allowing Jarmon and Rogers to establish heirship by proving the decedent's paternity under an amendment to the probate code enacted after the death of LePort Walton which the court applied retroactively. We affirm.

LePort Walton died intestate on October 20, 1986, in Tyler at the age of 72. He was married twice with the first marriage ending in divorce and the second ending on the death of his wife. No children were born or adopted during the marriages. Under the probate code at the time of his death,

Walton had eleven heirs: two brothers, six sisters, two nephews, and one niece. After the trial court appointed two of the decedent's sisters Co–Temporary Administratrices of Walton's estate, Jarmon and Rogers filed an application with the court to declare heirship. The case proceeded to trial on October 19, 1987, and the trial court determined that Jarmon and Rogers would each inherit an undivided fifty percent (50%) of Walton's estate based on the jury's findings that Jarmon and Rogers were the biological daughters of Walton.

The appellant's four points of error in one way or another all challenge the trial court's retroactive application of the 1987 amendment to section 42(b) of the Texas Probate Code because the decedent died before the enactment of the statutory amendment. Section 42(b) governs paternal inheritance rights. From 1979 to September 1, 1987, the statute provided that an illegitimate child could inherit from his or her father in one of the three following ways: (1) the child was born or conceived before or during the parent's marriage, (2) a proper decree of legitimation had been entered in the child's behalf under Chapter 13 of the Family Code, or (3) the child's father had executed a proper statement of paternity under section 13.22 of the Family Code. On September 1, 1987, the amendment to section 42(b) provided a fourth way by which an illegitimate child could inherit from his father. The amended statute provided that a child could also prove his paternal heirship by showing he was the biological child of the deceased father.

■ The appellees contend that without a statement of facts, the appellate court cannot determine which version of section 42(b) was used. Therefore, it must be presumed on appeal that sufficient evidence was introduced to support the trial court's judgment. We disagree. The transcript contains the two special issues submitted to the jury. The first special issue asked the following: "Do you find from clear and convincing evidence that NIKITA DENISE ROGERS is the biological child of LEPORT WALTON?" The second special issue asked: "Do you find from clear and con-vincing evidence that LEPAULA LANG JARMON is the biological child of LEPORT WALTON?" The jury answered yes to both special issues.

The wording of both special issues virtually tracts the exact language of the 1987 amendment to section 42(b) of the Texas Probate Code. Moreover, the wording of both special issues does not contain any reference to the other three ways of proving paternal heirship provided in the statute. Therefore, we believe it is clear that the trial court applied the amended version of the statute to the special issues and to its judgment declaring heirship.

Jarmon and Rogers further contend that if the trial court applied section 42(b) as amended in 1987, then the court properly applied the new law. We agree. It is a well-established presumption that an amendment to a statute is presumed to operate prospectively, not retroactively, unless terms of the statute show a contrary intention. *Deacon v. City of Euless*, 405 S.W.2d 59 (Tex.1966).

> It is well settled in this state that laws may not operate retroactively to deprive or impair vested substantive rights acquired under existing laws, or create new obligations, impose new duties, or adopt new disabilities in respect to transactions or considerations past. On the other hand, no litigant has a vested right in a statute or rule which affects remedy or is procedural in nature and which affects no vested substantive right.

*Ex Parte Abell*, 613 S.W.2d 255, 260 (Tex. 1981).

■ Upon the death of a person who dies without leaving a will, the inheritance rights are immediately vested in those who are the statutory intestate heirs. Tex. Prob.Code Ann. § 37 (Vernon Supp.1988); *Welder v. Hitchcock*, 617 S.W.2d 294 (Tex. Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.). On Walton's death on October 29, 1986, the inheritance rights vested in his eleven statutory heirs: his two brothers, six sisters, two nephews, and one niece. By applying the 1987 amended version of section 42(b) to this case, the appellants

contend that the trial court divested them of their statutory inheritance right.

In *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), the United States Supreme Court held that a total statutory disinheritance from the paternal estate, of children born out of wedlock and not legitimated by the subsequent marriage of the parents, was unconstitutional. The Illinois probate statute found unconstitutional in *Trimble* was very similar to section 42 of the Texas Probate Code as it existed in 1976. Texas courts have relied on *Trimble* as a basis for holding section 42 invalid in cases that were pending on April 26, 1977—the date *Trimble* was decided. *Winn v. Lackey*, 618 S.W.2d 910 (Tex.Civ.App.—Eastland 1981, writ ref'd n.r.e.); *Lovejoy v. Lillie*, 569 S.W.2d 501 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.).

In response to the *Trimble* decision, the Texas Legislature amended section 42 in 1977 and again in 1979 to provide three ways for illegitimate children to inherit from their father. In *Davis v. Jones*, 626 S.W.2d 303 (Tex.1982), the Texas Supreme Court determined after a discussion of the *Trimble* decision that section 42(b) of the Texas Probate Code after the 1977 amendment was constitutional. The court held that the State's interests in the orderly disposition and settlement of estates, the integrity of the family unit, and the encouragement of legitimate family relationships supported the legislation. *Id.* at 309.

In *Reed v. Campbell*, 476 U.S. 852, 106 S.Ct. 2234, 90 L.Ed.2d 858 (1986), the Supreme Court faced a situation in which an illegitimate child had been denied the right to inherit from her father who died intestate in 1976, a year before the 1977 *Trimble* decision was delivered. The Supreme Court determined that the 1976 version of section 42 of the Texas Probate Code was unconstitutional. *Id.* at 2238. Before the case reached the Supreme Court, the El Paso Court of Appeals denied the illegitimate daughter the right to share in her father's estate because the court refused to retroactively apply the *Trimble* decision when the father died before the decision

and her suit was filed after the decision. *Reed v. Campbell*, 682 S.W.2d 697 (Tex. App.—El Paso 1984, writ ref'd n.r.e.). Moreover, the El Paso Court held that the daughter would not inherit as a recognized illegitimate child because section 42(b) provides the only methods by which an illegitimate child may inherit from her father and proof of recognition is not one of them. *Id.* at 700. In reversing and remanding the case, the United States Supreme Court held that the illegitimate's claim to a share in her father's estate was protected by the full applicability of its earlier decision in *Trimble*, regardless of when the decedent died or when the illegitimate child's claim was filed. *Reed*, 106 S.Ct. at 2235. In response to the El Paso Court's ruling that the version of 42(b) amended in 1977 and 1979 also prohibited the illegitimate daughter from inheriting from her father's estate by proving his paternity, Justice Powell stated the following:

> In addition to concluding that *Trimble* did not apply, the Texas Court of Appeals stated, "[e]ven if the plaintiff could claim under section 42(b) as amended, her exclusion from the inheritance under that statute does not deny her constitutional equal protection since a rational state basis supports that legislation." 682 S.W.2d, at 700. We read that statement, not as an alternative ground for the court's judgment, but as the rejection of an alternative ground for appellant's recovery. To read it as assuming that the amended statute defeated appellant's claim even if *Trimble* applied, would, in the context of this case and the amended statute's requirements, raise serious due process questions.

*Reed*, 106 S.Ct. at 2238 (n. 8). We believe that the failure to retroactively apply the 1987 amended version of section 42(b) despite the fact that Walton died before its enactment would also raise serious due-process questions.

As in *Reed*, the illegitimate daughters in this case sought to inherit from their father's estate by proving that they were his biological daughters. However, section 42(b) did not provide for such a method until the 1987 amendment. Although the

Texas Supreme Court in *Davis* ruled 42(b) constitutional as it existed before the 1987 amendment because of the rational state interest in the orderly disposition of a decedent's estate, the Supreme Court stated the following:

> The state interest in the orderly disposition of decedents' estates may justify the imposition of special requirements upon an illegitimate child who asserts a right to inherit from her father, and, of course, it justifies the enforcement of generally applicable limitations on the time and the manner in which claims may be asserted. After an estate has been finally distributed, the interest in finality may provide an additional, valid justification for barring the belated assertion of claims, even though they may be meritorious and even though mistakes of law or fact may have occurred during the probate process.

*Reed,* 106 S.Ct. at 2237. Finding no justification for the State's rejection of the illegitimate's claim in *Reed,* the Supreme Court further noted that "neither the date of his death nor the date the claim was filed had any impact on the relevant state interest in orderly administration; their conjunction similarly had no impact on the state interest." *Reed,* 106 S.Ct. at 2238. Therefore, the fact that the father died before the *Trimble* decision did not foreclose his daughter's right to inherit from his estate by proving paternity.

In this case LePort Walton died October 20, 1986, ten months before the effective date of the new statute. The appellees' application to declare heirship was filed December 5, 1986; less than two months after Walton's death and before any distribution of the estate. In this case, as in *Reed,* none of the legitimate state objectives relied upon by the United States Supreme Court to justify the imposition of special requirements upon illegitimates seeking to inherit from their fathers exist. Neither the State's legitimate interest in the orderly administration of estates nor in finality will be affected by the outcome of this case, nor can they be seriously urged as reasons justifying discriminatory treatment foreclosing Jarmon's and Roger's right to inherit from their father. If Walton's estate had been distributed before the illegitimate daughters had filed their claim, then the State's interest in finality would have provided sufficient justification to prohibit the daughters' attempt to prove paternity. But such is not the case. Jarmon and Rogers filed their claims for inheritance soon after Walton's death and before his estate was distributed. We believe that the State's interest in the accurate and efficient disposition of property at death will not be compromised in any way by allowing their claim in these circumstances. "The reach of the statute extends well beyond the asserted purposes." *Trimble,* 430 U.S. at 772, 97 S.Ct. at 1466.

Therefore, the application by the trial court of section 42(b) as it existed on the date of Walton's death would have unjustifiably deprived Jarmon and Rogers equal treatment protected by the Fourteenth Amendment. Appellants' four points of error are overruled.

Judgment is affirmed.