Turner v. Nesby 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 




NO. 3-92-116-CV





YVETTA TURNER,




 APPELLANT


vs.





DEREK EUGENE NESBY,



 APPELLEE



 




FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY



NO. 58,856, HONORABLE GUY HERMAN, JUDGE PRESIDING



 




 Derek Eugene Nesby, appellee, filed a bill of review in probate court seeking to
set aside a 1983 judgment that declared Yvetta Turner, appellant, sole heir of Ulysses S. Young
and distributed to Turner all property belonging to Young's estate. Nesby claimed to be Young's
illegitimate child. The probate court granted Nesby's bill of review and ordered a new trial in the
original cause to determine whether Nesby was Young's heir. Turner appeals this order. (1)

 Turner complains on appeal that the probate court erred in (1) retroactively
applying a statutory amendment enacted after Young's death, instead of applying the statutory law
in effect on the date of death; (2) concluding that the 1983 judgment declaring heirship was void;
(3) failing to properly apply the relevant statute of limitations; and (4) failing to properly apply
the standard of proof required in a bill of review. We will reverse the judgment of the probate
court and render judgment that Nesby take nothing by his bill of review.



BACKGROUND


 Young died intestate on July 18, 1983. Turner, who was Young's sister, filed an
application to determine heirship (the "application") on December 2, 1983. Nesby did not receive
actual notice of the 1983 heirship proceeding; only constructive notice was provided through
posting at the courthouse. Nesby was not a party to the proceeding. On December 20, 1983, the
Travis County court at law rendered a judgment declaring Turner to be Young's sole heir and
ordering all assets of his estate distributed to her.

 On the date of Young's death, Nesby did not qualify as a "legitimate child of his
father" for inheritance purposes under the Texas Probate Code, Act of May 17, 1979, 66th Leg.,
R.S., ch. 713, § 5, 1979 Tex. Gen. Laws 1740, 1742 (Tex. Prob. Code Ann. § 42(b), since
amended), and the Code did not allow a post-death paternity hearing to determine heirship. 
Effective September 1, 1987, the Code was amended to provide for such a hearing. Act of May
30, 1987, 70th Leg., R.S., ch. 464, 1987 Tex. Gen. Laws 2051 (Tex. Prob. Code Ann. § 42(b),
since amended). Not until May 14, 1991, however, did Nesby file his bill of review seeking to
set aside the 1983 judgment. In his bill of review, Nesby asserted that he was Young's
illegitimate son and was entitled to a statutory post-death paternity hearing. In addition, he
asserted that the 1983 judgment was void because Turner's application was not supported by a
sworn affidavit verifying the facts asserted as required by the Code, Tex. Prob. Code Ann.
§ 49(b) (West 1980).

 After a hearing on the matter, the probate court filed the following conclusions of
law: (1) the amended section 42(b) providing a post-death paternity hearing applies to deaths
occurring before the effective date of the amendment, September 1, 1987; (2) Turner's 1983
application did not constitute a sufficient verified pleading and, therefore, the court rendering the
1983 judgment lacked jurisdiction to do so; and (3) Nesby was not barred from filing his bill of
review by the four-year statute of limitations contained in section 55(a) of the Code. Based on
these conclusions, the probate court granted Nesby's bill of review and ordered a new trial to
determine whether Nesby was an heir of Young's.



DISCUSSION


 Turner asserts nineteen points of error complaining of the probate court's judgment. 
The points of error can be grouped into four general categories: (1) applicable statutory law; (2)
validity of the 1983 judgment; (3) statute of limitations; and (4) standard of proof for bill of
review. We will address Turner's points of error in that order.



1.  APPLICABLE STATUTORY LAW 

 In point of error seven, Turner complains that the probate court erred as a matter
of law in failing to conclude that the statutory law in effect in 1983 controlled the disposition of
Young's estate. As a general rule, "[t]he statutes in force at the time of death govern the
disposition of the decedent's estate." Dickson v. Simpson, 807 S.W.2d 726, 727 (Tex. 1991). 
The statute in force at the time of Young's death was the 1979 version of section 42(b) of the
Code. Under the 1979 statute, Nesby was not considered a child of Young's for purposes of
inheritance and, therefore, was not entitled to petition the probate court to determine his right to
any inheritance from Young. If the general rule is followed, Nesby is barred from asserting any
claim for inheritance.

 When the statutory framework completely bars an individual from ever asserting
any claim to paternal inheritance, however, the statute is unconstitutional as applied to that
individual. Dickson, 807 S.W.2d at 727-28. Because the 1979 statute never permitted Nesby to
assert his claim to inherit from Young, the statute is unconstitutional as applied to him. We
conclude that Nesby was entitled to "a fair opportunity to establish [his] heirship." Id. at 728. 
Accordingly, we overrule Turner's seventh point of error.

 In her sixth point of error, Turner complains that the probate court erred in
retroactively applying the 1987 amendment to section 42(b) and allowing Nesby to petition for a
determination of heirship. Nesby contends that the court was correct in its action because failure
to apply the amended version would deny him the right to petition the probate court for a
determination of heirship and thereby violate his constitutional rights.

 Nesby cites Henson v. Jarmon, 758 S.W.2d 368 (Tex. App.--Tyler 1988, no writ),
as a case directly on point. In that case, the court retroactively applied the 1987 amendment to
section 42(b) to prevent unjustifiably depriving illegitimate children of their constitutional rights. 
We disagree with the analysis articulated in Henson, because there was no need for retroactive
application. If a statute is unconstitutional as applied to a particular individual, then the statute
may not be applied. Dickson, 807 S.W.2d at 727-28. This rule is in no way contingent on the
subsequent passage of a statute affirmatively protecting the constitutional rights of that individual
or others similarly situated. Whether the 1987 amendment was passed or not, application of the
1979 statute would still be unconstitutional. Retroactive application of the 1987 amendment is not
only unnecessary, it is directly contrary to the general rule that the statutes in effect at the time
of death control the disposition of the estate. Because Nesby's constitutional rights can be
preserved using the Dickson analysis without applying the 1987 amendment to section 42(b), we
see no need to apply the amendment retroactively to protect Nesby's constitutional rights. 
Accordingly, we sustain Turner's sixth point of error to the extent that it complains of retroactive
application of the 1987 statutory amendment; we overrule the remaining complaints under this
point.



2.  VALIDITY OF 1983 JUDGMENT

 In points of error eight through sixteen, Turner complains that the probate court
erred in concluding that the court in the original heirship proceeding lacked jurisdiction to render
the 1983 judgment. As we interpret Turner's points of error, points eight through fourteen assert
that the probate court erred in concluding that Turner's 1983 application to determine heirship was
not valid and proper in every respect, while points fifteen and sixteen assert that, if any
deficiencies existed, the 1983 judgment was merely voidable, not void. If the judgment is merely
voidable, any applicable limitations period for challenging it will control. Accordingly, we must
determine whether Turner's application was, at a minimum, sufficient to give the court
jurisdiction to render the 1983 judgment.

 The probate court determined that Turner's 1983 application was not sufficiently
verified and, therefore, the court lacked jurisdiction to render the 1983 judgment. At that time,
section 49(a) of the Code required that an application for heirship provide "a general description
of all the real and personal property belonging to the estate of the decedent." Act of May 17,
1979, 66th Leg., R.S., ch. 713, § 7, 1979 Tex. Gen. Laws 1740, 1744-45 (Tex. Prob. Code Ann.
§ 49(a)(7), since amended). Section 49(b) of the Code required that the application for heirship
be supported by an affidavit of the applicant stating that "insofar as is known to such applicant,
all allegations of such application are true in substance and in fact and that no material fact or
circumstance has, within the affiant's knowledge, been omitted from such application." Tex.
Prob. Code Ann. § 49(b) (West 1980). 

 Turner's application provided the property description required by section 49(a)(7). 
However, the affidavit submitted in connection with her application provided only general
statements regarding the estate. The jurat that followed both the application and the affidavit
stated: "[I]nsofar as is known to me, all allegations of the foregoing Affidavit are true in
substance and in fact and that no material fact or circumstance has, within my knowledge, been
omitted from the Affidavit." (Emphasis added.) The general statements in Turner's affidavit did
not include a description of the property in the estate. Nesby contends that Turner's application
was fatally deficient because (1) there was no sworn statement as to the property belonging to the
estate as required by section 49(a)(7); and (2) there was no sworn application as required by
section 49(b) because, under the technical wording of the jurat, Turner verified only the
statements made in the affidavit, not those made in the application.

 Nesby cites two cases for the proposition that an application is void if not verified: 
Wilson v. Wilson, 378 S.W.2d 156 (Tex. Civ. App.--Tyler 1964, no writ), and Rose v. Burton,
614 S.W.2d 651 (Tex. Civ. App.--Texarkana 1981, writ ref'd n.r.e.). In each of those cases, the
court held an earlier judgment to be void on the ground there was no verification of the
application as required by section 49(b). In both cases, however, no affidavit whatsoever was
submitted. Neither court was faced with a situation in which an affidavit was submitted, but was
merely deficient in some respect.

 In the present case, the file-stamp notations on the relevant documents show that
the affidavit was filed with the application. The property description was provided in the
application as required. The only error in the documents submitted was the substitution of the
word "affidavit" for "application" in the jurat; in all other respects, the jurat tracked the statutory
language of section 49(b). Although we conclude that this error rendered Turner's application
deficient, we also conclude that the application, affidavit, and jurat together were sufficient to
confer jurisdiction on the court to render judgment. Therefore, the 1983 judgment was merely
voidable, not void.

 A voidable judgment can be corrected by direct attack on appeal. When the time
for direct attack by appeal has expired, as is the case here, "a bill of review in the court rendering
the initial judgment is the exclusive remedy to attack the judgment." Browning v. Placke, 698
S.W.2d 362, 363 (Tex. 1985). Thus, after the time ran for perfecting a direct appeal from the
1983 judgment, Nesby's only means of contesting it was by bill of review.

 Because Turner asserts in points of error eight through fourteen that the application
was proper and valid in every respect, we overrule those points of error. However, because
Turner asserts in points of error fifteen and sixteen that the 1983 judgment was merely voidable
and not void, we sustain those points of error.



3.  STATUTE OF LIMITATIONS

 In points of error one through five, Turner complains that the probate court erred
in concluding that the Code's four-year statute of limitations for contesting a judgment declaring
heirship did not bar Nesby's bill of review. In other words, assuming Nesby was entitled to
petition the probate court for a determination of heirship, Turner contends that Nesby's time to
do so had expired before he filed his bill of review in 1991. We agree.

 The judgment declaring heirship was signed December 20, 1983. Section 55(a) of
the Code provides a four-year limitations period for an heir to contest such a judgment:



Such judgment [declaring heirship] shall be a final judgment . . . . If any person
who is an heir of the decedent is not served with citation by registered or certified
mail, or by personal service, he may at any time within four years from the date
of such judgment have the same corrected by bill of review . . . .

 


Tex. Prob. Code Ann. § 55(a) (West 1980). Applying this provision to the facts of the present
case, any alleged heir to Young's estate had four years from the date of the December 20, 1983,
judgment to contest it by bill of review. Nesby, however, filed his bill of review on May 14,
1991, more than seven years after the judgment was signed.

 The probate court concluded that Nesby's bill of review was timely because he was
not considered an heir at the time of the 1983 judgment and, therefore, the section 55(a)
limitations period did not begin to run against him at that time. Rather, the probate court
concluded that the limitations period did not begin to run until Nesby was entitled to petition for
a determination of heirship pursuant to the September 1, 1987, amendment to section 42(b). 
Under this analysis, the probate court concluded that Nesby had four years from the effective date
of the statutory amendment to file his bill of review. We disagree. We have concluded above that
Nesby was entitled at the time of Young's death to petition the probate court for a determination
of heirship, because the 1979 statute which precluded him from doing so was unconstitutional as
applied to him. Accordingly, Nesby could have petitioned for a determination of heirship in 1983
and, if he was adjudged an heir, participated in the distribution of Young's estate; if the judgment
had not been to his liking, he could have challenged it by direct appeal.

 Nesby cites Dickson v. Simpson, 781 S.W.2d 723 (Tex. App.--Austin 1989), rev'd
on other grounds, 807 S.W.2d 726 (Tex. 1991), as support for his position. In Dickson, this
Court stated that "[a]ppellant's right [pursuant to the general four-year statute of limitations] to
establish inheritance status by court order of paternity commenced upon the effective date of the
amendment." Id. at 725. In Dickson, however, we were not considering a post-death
amendment; the statutory amendment in that case was passed during the lifetime of the purported
heir's father. Accordingly, we were not required, in Dickson, to weigh or consider the important
public policy favoring finality of judgments.

 In the present case, on the other hand, Nesby's right to a fair opportunity to
establish his heirship status must be balanced against the state's (and Turner's) interest in the
orderly administration of estates and the finality of judgments distributing estates. Had the 1983
judgment determining heirship and distributing Young's estate not intervened, Nesby may have
been entitled to petition the probate court in 1991 for a determination of heirship. (2) Under the
facts of the present case, however, a judgment had been rendered more than seven years earlier.

 The state's interest in the orderly administration of estates is an important
governmental interest. See Lalli v. Lalli, 439 U.S. 259, 268 (1978) (citing a line of cases from
1850 to 1977); Dickson, 807 S.W.2d at 727. Moreover, the state's interest in the finality of
judgments distributing estates can constitute a sufficient basis for barring claims. In Reed v.
Campbell, 476 U.S. 852 (1986), the Supreme Court stated that "[a]fter an estate has been finally
distributed, the interest in finality may provide an additional, valid justification for barring the
belated assertion of claims, even though they may be meritorious and even though mistakes of law
or fact may have occurred during the probate process." Id. at 855-56 (emphasis added).

 The court in Henson v. Jarmon reached the same conclusion that we do here, but
did so by adopting a retroactive-application analysis. Although we disagree with that analysis,
the remaining portion of the opinion is relevant to our disposition of this appeal. The court in
Henson indicated that two illegitimate daughters should be entitled to petition for a post-death
paternity hearing even though not entitled to do so under the statute in effect at the time of death. 
The court specifically indicated, however, that "[i]f [the] estate had been distributed before the
illegitimate daughters had filed their claim, then the State's interest in finality would have provided
sufficient justification to prohibit the daughters' attempt to prove paternity." Henson, 758 S.W.2d
at 371 (emphasis added). The plain language of section 55(a) confirms that the interest in finality
of judgments should be given great weight: after four years even a bona fide, undisputed heir is
prohibited from challenging the judgment. Adopting Nesby's position in the present case would
undercut that interest.

 We conclude that the state's interest in the orderly administration of estates and
finality of judgments distributing estates is sufficient justification for barring Nesby's claim. If
we were to hold otherwise, then between September 1, 1987, and September 1, 1991, any
individual claiming to be an illegitimate child of a decedent would have been entitled to contest
any judgment distributing the decedent's estate, no matter how old (e.g., a judgment rendered in
1940), and, upon determination of heirship, petition for a redistribution of the property of the
estate. The implications of such a holding are unacceptable. We conclude that, pursuant to
section 55(a), the limitations period for Nesby to contest the judgment began to run on December
20, 1983. Accordingly, we sustain Turner's points of error one through five.



4.  STANDARD OF PROOF FOR BILL OF REVIEW

 In points of error seventeen through nineteen, Turner complains that the probate
court failed to properly apply the standard of proof required in a bill of review. Because we have
concluded above that the applicable limitations period barred Nesby's bill of review, we need not
address these points of error.



CONCLUSION


 Based on the foregoing analysis, we conclude that pursuant to section 55(a) of the
Code the time for Nesby to challenge the 1983 judgment distributing Young's estate expired on
December 20, 1987. Accordingly, we reverse the judgment of the probate court and render
judgment that Nesby take nothing by his bill of review.



 J. Woodfin Jones, Justice

[Before Chief Justice Carroll, Justices Jones and Kidd]

Reversed and Rendered

Filed: February 24, 1993

[Publish]

1.   Such an order normally would not be considered a final judgment. See Baker v.
Goldsmith, 582 S.W.2d 404, 409 (Tex. 1979). A probate order, however, is final and
appealable "if it conclusively disposes of and is decisive of the issue or controverted question
for which that particular part of the proceeding was brought, even if the decision does not
fully and finally dispose of the entire probate proceeding." Huston v. FDIC, 800 S.W.2d 845,
848 (Tex. 1990). In the present case (1) the bill of review was severed from the 1983 heirship
proceeding and given a different cause number, thus becoming a separate and independent
cause, (2) the probate court's order conclusively disposed of the issue of the validity of the
1983 judgment, thus finally adjudicating a substantial right of Turner's, and (3) the probate
court's order expressly recited that no further proceedings were to be conducted in the bill of
review cause number. We conclude the probate court's order is appealable.
2.   We do not decide whether any limitations period applies to a requested heirship
determination when no intervening judgment distributing the estate has been rendered.