Denise DeSONIER, Plaintiff–Appellant,

Amanda M. DeSonier, Plaintiff,

v.

Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant–Appellee.

No. 89–1167.

United States Court of Appeals, Sixth Circuit.

Submitted March 15, 1990.

Decided June 22, 1990.

Rehearing and Rehearing En Banc Denied Sept. 14, 1990.

T.J. Hartman, Legal Aid of Western Mich., Grand Rapids, Mich., for plaintiff-appellant.

Donna Morros Weinstein, Chief Counsel, Jerald S. Post, Dept. of Health and Human Services, Office of Gen. Counsel, Region V, Chicago, Ill., for defendant-appellee.

Before WELLFORD and NELSON, Circuit Judges, and LIVELY, Senior Circuit Judge.

LIVELY, Senior Circuit Judge.

The plaintiff appeals from the judgment of the district court affirming the decision of the Secretary of Health and Human Services which denied child's insurance benefits to her ten year old daughter, Amanda DeSonier. 42 U.S.C. § 402(d) (1988). The Secretary concluded that the plaintiff failed to establish that Amanda was the "child" of a deceased wage earner, Russell D. Phillis, as defined in 42 U.S.C. § 416(e). The district court held that the Secretary's decision was supported by sub-stantial evidence and was legally correct. We reverse for the reasons hereinafter stated.

## I.

The plaintiff and Phillis were never married. They lived together, however, from September 1977 until July 1979, when the plaintiff left Phillis. She was pregnant when she left, and Amanda was born on October 31, 1979. The plaintiff and Phillis lived together, first in Florida, and later in Ohio. After leaving Phillis because of his alcoholism, the plaintiff returned to Michigan where her family lived. She did not enter a name for Amanda's father on the birth certificate and she never sought court-ordered support from Phillis. The plaintiff testified that Phillis paid her prenatal medical expenses and purchased a cradle for the baby. Phillis visited the plaintiff one time after Amanda was born and gave her a check for $155. The check was drawn on a joint account she and Phillis had maintained while living together and which she had closed after they separated. Thus, the check was not honored.

Phillis died on January 29, 1986, and the plaintiff filed an application for child's insurance benefits on September 8, 1986. After her application was denied originally and upon reconsideration, the plaintiff requested a hearing before an administrative law judge (ALJ). At the hearing in October 1987, the plaintiff attempted to establish that she and Phillis were joined in a common law marriage while living together in Ohio between July 1978 and July 1979. Amanda was conceived during this period. The ALJ found that the plaintiff and Phillis did not enter into a valid common law marriage under Ohio law, and that Amanda did not qualify as a "child" of Phillis under any other provision of the Social Security Act. The decision was filed December 24, 1987.

The ALJ recognized that a claimant's relationship to a deceased wage earner is determined by applying the laws of the state in which the worker was domiciled at the time of his death. Phillis was living in Texas when he died. Determination of a

claimant's family status is made by applying the provisions of 42 U.S.C. § 416(h). One of the ways an illegitimate child may qualify as the "child" of a wage earner eligible for insurance benefits is by satisfying the requirements of 42 U.S.C. § 416(h)(2)(A), which provides in pertinent part:

> In determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or, if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death.... Applicants who according to such law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such.

The ALJ considered Texas intestacy law as it existed up to August 27, 1979, the last amendment before Phillis's death, and concluded that "Amanda M. DeSonier is not the 'child' of the wage earner under Texas State law as required by section 216(h)(2)(A) of the Social Security Act [42 U.S.C. § 416(h)(2)(A)]."

The plaintiff appealed to the district court. The Secretary filed a motion for summary judgment to which the plaintiff did not respond, and as a result the case was submitted on the administrative record. The district court found that Amanda did not qualify for insurance benefits under several provisions of the Act and granted the Secretary's motion for summary judgment. In so doing, the district court noted that:

> Amanda could qualify for CIB if she could inherit Phillis' personal property as his natural child under State inheritance laws. To determine the relationship between Amanda and Phillis, the ALJ looked to the laws that were in effect at the time Phillis died, in the State where he made his residence. 20 C.F.R. § 404.354(b). After reviewing the record, the ALJ found that Amanda was not the "child" of Phillis under Texas law, the State where he died.

> There are numerous instances in which a minor can acquire the status of "child" under Texas law.... The ALJ properly concluded that no common-law marriage had been established under Ohio law, which leads to the conclusion that Amanda was not the "child" of Phillis under Texas law.

While the district court did not specifically consider whether Amanda qualified as one who would take under the Texas law of intestate succession pursuant to § 416(h)(2)(A), the plaintiff's failure to satisfy this section of the Act was one of the bases of the ALJ's decision, and the correctness of that determination is properly before us on appeal.

## II.

As framed by the plaintiff in her brief, the issue is what Texas law should be applied to determine whether Amanda qualified as the child of Phillis. The Texas law of intestate succession was amended effective September 1, 1987. The amendment added a new provision by which an illegitimate child may be found legitimate for the purpose of inheritance from its father and other paternal kindred.

In 1986, the year of Phillis's death and of the plaintiff's application, the statute read as follows:

> For the purpose of inheritance, a child is the legitimate child of his father if the child is born or conceived before or during the marriage of his father and mother or is legitimated by a court decree as provided by Chapter 13 of the Family Code, or if the father executed a statement of paternity as provided by Section 13.22 of the Family Code, or a like statement properly executed in another jurisdiction, so that he and his issue shall inherit from his father and from his paternal kindred, both descendants, ascend-

ants, and collaterals in all degrees, and they may inherit from him and his issue. Tex.Prob.Code Ann. § 42(b) (Vernon 1980).

The 1987 amendment, in effect at the time of the hearing and of the ALJ's decision, added the following:

A person claiming to be an illegitimate child, or claiming inheritance through an illegitimate child, may petition the probate court for a determination of right of inheritance. If the court finds by clear and convincing evidence that the purported father was the father of the child, the child is legitimate for the purpose of inheritance and he and his issue may inherit from his paternal kindred, both descendants, ascendants, and collaterals in all degrees, and they may inherit from him and his issue. This section does not permit inheritance by a purported father of an illegitimate child, whether recognized or not, if the purported father's parental rights have been terminated.

Tex.Prob.Code Ann. § 42(b) (Vernon Supp. 1988).

### A.

The plaintiff argues that the ALJ should have applied the law of Texas in effect at the time he rendered the decision in December 1987. She relies on the familiar rule "that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary," quoting *Bradley v. School Board of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). She asserts that application of current Texas intestacy law would not result in manifest injustice, and that there is no direction or history indicating that current law should not be applied. Further, neither the statute nor the amendment contains a nonretroactivity provision.

The plaintiff presented evidence at the hearing that she contends provided clear and convincing evidence that Phillis was Amanda's father. Thus, she argues, if the ALJ had applied current Texas intestacy law as of the time of the hearing and of his decision, he would have been compelled to hold that Phillis was Amanda's father and that Amanda was legitimate for purposes of inheritance. Since this evidence was fully developed at the hearing, the plaintiff asks this court to make the necessary determination on the basis of the administrative record.

### B.

The Secretary relies on the language of § 416(h)(2)(A), his regulations, and court decisions applying state law in effect at the time of the wage earner's death. As we have noted, § 416(h)(2)(A) provides that if the insured worker is dead the Secretary must apply such law as would be applied "by the courts of the state in which he was domiciled at the time of his death." The Secretary argues that "at the time of his death" modifies "such law as would be applied" as well as "the State in which he was domiciled." The Secretary adopted this construction of the statute in a regulation promulgated pursuant to 42 U.S.C. § 405(a). The regulation states, "If the insured is deceased, we look to the laws that were in effect at the time the insured worker died in the State where the insured had his or her permanent home." 20 C.F.R. § 404.354(b) (1988). The Secretary cites numerous authorities for the proposition that courts should defer to the interpretation of a statute by the agency charged with the responsibility for administering it.

Finally, the Secretary contends that if we hold that Amanda's eligibility should be determined by Texas law as amended in 1987, this court should not make factual findings, but should remand the case to the Secretary for further proceedings applying Texas law in effect at the time of decision.

### III.

### A.

The Social Security Act provides survivor's benefits for children of deceased wage earners. In order to qualify, a child must have been "dependent" on the wage earner at the time of his or her death. 42 U.S.C. § 402(d)(1)(C). The dependency re-

quirement may be satisfied in a number of ways, not all of which require proof of actual financial dependency. As pertinent to this case, an applicant who is deemed a child of the wage earner by satisfying § 416(h)(2)(A) is also deemed "legitimate" under § 402(d)(3) and thus enjoys a presumption of dependency. See *Mathews v. Lucas*, 427 U.S. 495, 499 n. 2, 96 S.Ct. 2755, 2759 n. 2, 49 L.Ed.2d 651 (1976) ("any child who qualifies under § 216(h)(2)(A) ... is considered legitimate for § 202(d)(3) purposes, and thus dependent"). Sections 216(h)(2)(A) and 202(d)(3) of the Act are codified at 42 U.S.C. §§ 416(h)(2)(A) and 402(d)(3), respectively.

## B.

■ ▇ The federal courts of appeal do not agree on what version of state intestacy law to apply in determining an applicant's status under § 416(h)(2)(A), i.e., whether to apply the state intestacy law in effect at the time the wage earner died, at the time the applicant filed for benefits, or at the time the Secretary reached a decision.

In *Schaefer on Behalf of Schaefer v. Heckler*, 792 F.2d 81 (7th Cir.1986), the court affirmed denial of benefits to an illegitimate child, applying state intestacy laws in effect on the date of the father's death. The court reached this conclusion despite the fact that two changes in Wisconsin law had made it possible for the child's mother to obtain a posthumous court determination that the wage earner was the child's natural father. The fact that the new law could be applied retroactively in the paternity suit did not render it the applicable law for determining intestate succession. *Id.* at 84–85.

Judge Ripple dissented in *Schaefer*. He argued that the amendments to the Wisconsin statutes did not effect substantive law, but merely provided a procedure for establishing paternity posthumously. Before the amendments Wisconsin law permitted illegitimate children to inherit from their fathers as long as paternity had been established. There was no reason to deny the use of "this new *procedural* tool to

establish the necessary facts." *Id.* at 87 (italics in original).

In *Cox v. Schweiker*, 684 F.2d 310, 318 (5th Cir.1982), the court held that a child's "status as a potential recipient of survivor's benefits was fixed at the time he applied, and the relevant state law made applicable pursuant to section 416(h)(2)(A) is the law in force at the time of his application." The Georgia law in force at the time of the application in *Cox* was found to be unconstitutional, and the court reasoned that with the elimination of the provisions that discriminated against illegitimate children, the applicant would be eligible under § 416(h)(2)(A). *Id.* at 324. See also *Smith v. Bowen*, 862 F.2d 1165, 1166 (5th Cir. 1989); *Garcia v. Sullivan*, 883 F.2d 18, 19 n. 2 (5th Cir.1989); and *Hart By and Through Morse v. Bowen*, 802 F.2d 1334, 1336 n. 1 (11th Cir.1986) (all following *Cox* and finding that state law at time of application controls).

In *Childress v. Secretary of Health and Human Services*, 679 F.2d 623 (6th Cir. 1982), this court determined that a claimant was not a "child" under § 416(h)(2)(A) because, "[u]nder the Georgia law in force *at the time of the application* of claimant for benefits an illegitimate child could not inherit from his father." *Id.* at 627 (italics added). The court did not find it necessary to consider the constitutionality of the Georgia statute because it determined that the applicant qualified under another subsection of § 416 providing benefits for the biological child of a wage earner who was making regular and substantial contributions to the child's support at the time of his death. See 42 U.S.C. § 416(h)(3)(C)(ii). *Id.* at 628.

In *Owens By and Through Owens v. Schweiker*, 692 F.2d 80 (9th Cir.1982), the court interpreted "at the time of his death" in § 416(h)(2)(A) to refer to the place of domicile only, and not as determinative of what version of the domiciliary state's intestate succession law to apply. Under the law of the father's domicile at the time of the father's death, the child would not have inherited from his father. After the father's death, but before the application

for benefits was filed, the state amended its law of intestate succession. Under the amended statute the child was eligible to inherit from his father. The court concluded that "at the time of his death" was intended to modify only the immediately preceding language, "the courts of the State in which he was domiciled," and not to modify the more remote "such law as would be applied." *Id.* at 82.

In addition to its grammatical analysis, the court supported its conclusion as follows:

> There are no significant policy reasons to apply the intestacy law in effect at the time of the wage earner's death. The Secretary points out that the law of intestate succession in effect on the date of death usually applies for probate purposes. The reason for this, however, is the need to fix the rights of all heirs in the intestate's estate. There is no corresponding need to fix the rights of a Social Security claimant immediately upon the death of the wage earner. See *Cooper v. Harris*, 499 F.Supp. [266] at 267 [N.D.Ill.1980]. The use of a state's intestacy law is a rough attempt to sort out dependent children. There is no reason to believe that Washington's repealed intestacy law is better suited to this purpose than its current law.

*Id.* Following the "well-established principle" that a court applies the law in effect at the time it renders its decision, the court held that the Secretary should have applied the law in effect at the time of his decision, rather than that in effect at the time of the father's death. *Id.* at 82–83.

The Court of Appeals for the Third Circuit has construed § 416(h)(2)(A) in two reported cases. See *Adens for Green v. Schweiker*, 773 F.2d 545 (3rd Cir.1985) and *Morales on Behalf of Morales v. Bowen*, 833 F.2d 481 (3rd Cir.1987). In *Adens* the court declined to follow *Cox* and *Owens* because the law of Pennsylvania, the father's domicile, required application of intestacy laws as they existed on the date of the father's death. Further, the Pennsylvania intestacy law in effect at the time of the child's application for benefits con-

tained an explicit nonretroactivity clause. The court then noted, however, that the provision of the state law in effect at the father's death that made the child ineligible had been found unconstitutional. 773 F.2d at 547–48. Applying the rule of "neutral extension," the court determined that with the unconstitutional provision excised the applicable law treated legitimate and illegitimate children the same for inheritance purposes. *Id.* at 548.

In *Morales* the court of appeals construed *Adens* as holding that, "where a state's law has changed between the time of death and the conclusion of the Social Security survivor's benefits process, the court must determine the time at which the *state* fixes intestate rights and must apply the statute that would be applied by that state's courts." 833 F.2d at 485 (italics in original). The court then determined that the state courts of New Jersey would apply the intestacy law in effect at the time of the Secretary's decision. *Id.* at 486. Rather than remanding for a new hearing, the court of appeals examined the administrative record and concluded that the applicant had satisfied the requirements of the current state law for inheritance from her father. *Id.* at 487–88.

In two cases, the Court of Appeals for the Fourth Circuit applied versions of state intestacy laws that it determined the states would apply and found the illegitimate children of deceased wage earners eligible for benefits. See *Jones v. Heckler*, 712 F.2d 924, 926 (4th Cir.1983) (applying West Virginia law); *Jones v. Heckler*, 754 F.2d 519, 520 (4th Cir.1985) (applying Mississippi law). In both cases, the court applied state laws that took effect several years after the children had applied for benefits.

We agree with the Ninth Circuit in *Owens* that in determining an applicant's status under § 416(h)(2)(A), the Secretary is required to apply the state intestacy law in effect at the time of his decision rather than at the time of the wage earner's death. Further, we adopt the approach of the Third Circuit in *Morales* that the Secretary must determine the time at which the state fixes intestate rights and must apply

the statute that would be applied by the state's courts. In the present case, our task is to determine the time at which Texas fixes intestate rights and the statute that would be applied by Texas courts. Beyond the fact that it contains no language barring retroactive application, Tex. Prob.Code § 42(b) as amended in 1987 provides no answer.

IV.

In the present case, the ALJ found that amendments had been added to the Texas law in 1975, 1977 and 1979, each providing a new or additional method by which an illegitimate child may establish its rights of inheritance from the natural father. He did not look beyond the 1979 amendment, which was in force when Phillis died. The 1987 amendment, which was in force when the hearing was held on Amanda's application and at the time of the decision, provided yet another procedure by which an illegitimate child may establish its right to inherit from its natural father. It was error not to consider the 1987 amendment.

In *Reed v. Campbell*, 476 U.S. 852, 106 S.Ct. 2234, 90 L.Ed.2d 858 (1986), the Supreme Court reversed a decision of the Texas Court of Appeals in which that court refused to apply *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), retroactively. One effect of *Trimble* was to invalidate Tex.Prob.Code § 42 as it existed in 1977. *Reed*, 476 U.S. at 853, 106 S.Ct. at 2263. That section totally excluded children born out of wedlock from sharing in the paternal estate unless legitimated by the subsequent marriage of their parents. Even though the illegitimate child in *Reed* filed her claim after April 26, 1977, the date of the *Trimble* opinion, the Texas Court of Appeals held that § 42 prevented the child from sharing in her father's estate because *Trimble* does not apply retroactively where the father died before the *Trimble* decision and the child filed suit after that decision. *Id.* at 853 n. 3, 856, 106 S.Ct. at 2236 n. 3, 2237. The Supreme Court held that the child's claim in her father's estate must "be protected by the full applicability of *Trimble* to her

claim." 476 U.S. at 856, 106 S.Ct. at 2238 (footnote omitted).

In *Henson v. Jarmon*, 758 S.W.2d 368 (Tex.Ct.App.1988), the Texas Court of Appeals affirmed a trial court decision retroactively applying Tex.Prob.Code § 42(b) as amended in 1987. The father died in October 1986 and his two illegitimate children filed an application with the probate court in December 1986 to declare heirship. In finding the children to be the sole heirs of their father's estate, the trial court applied the 1987 amendment to § 42(b) of the Texas Probate Code retroactively. The Texas Court of Appeals found that its decision was controlled by *Reed* and that the state had no legitimate objectives that would "justify the imposition of special requirements upon illegitimates seeking to inherit from their father. . . ." 758 S.W.2d at 371. Therefore, the Texas Court of Appeals affirmed the trial court's decision declaring the father's two illegitimate children the sole heirs of his estate.

V.

■■ Given the above, we believe that the Texas courts would apply Tex.Prob.Code § 42(b) as amended in 1987 in determining the right of Amanda DeSonier to inherit from Russell Phillis. Accordingly, we hold that Amanda's status under § 416(h)(2)(A) should have been determined by applying the 1987 amendment to Tex.Prob.Code § 42(b).

The Supreme Court has held that laws which grant inheritance rights to legitimate children but deny them to illegitimate children, solely on the basis of illegitimacy, violate the Equal Protection Clause of the Fourteenth Amendment. See *Levy v. Louisiana*, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968); *Weber v. Aetna Casualty & Surety Co.*, 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972); *Gomez v. Perez*, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973); *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977). Many states have rewritten provisions of their intestate succession laws as they relate to the rights of illegitimate children in response to these and other Supreme Court

decisions. Given the humane goal of recent state legislation to ease the stigma of illegitimacy and to provide support for innocent dependent children, there appears to be no sound reason to refuse to apply the current version of a state's intestate succession laws in determining whether a claimant is the "child" of a deceased wage earner.

The regulation relied upon by the Secretary, 20 C.F.R. § 404.354(b), applying the state law in effect at the time of the wage earner's death, obviously serves an interest in administrative efficiency. Much more important considerations than administrative efficiency, however, lead us to the conclusion that the rule requiring a court to apply the law in force at the time of its decision should control the Secretary's determinations of a child's eligibility for survivor's benefits. The Nation has demonstrated an increasing solicitude in recent years for the welfare of dependent children, both legitimate and illegitimate, that is best served by applying current state law when deciding a claim under § 416(h)(2)(A).

The judgment of the district court is reversed. The case is remanded for further remand to the Secretary with directions to reconsider Denise DeSonier's application under current Texas law.

WELLFORD, Circuit Judge, concurring.

I write separately to express concern over the majority's apparent conclusion that 20 C.F.R. § 404.354(b) is not a reasonable interpretation of 42 U.S.C. § 416(h)(2)(A). I disagree with this conclusion, but because of the peculiar circumstances of this case, I join in a remand for the limited purpose of determining whether plaintiff can inherit under the 1987 amendment to the Texas probate code. *See* Tex. Prob.Code Ann. § 42(b) (Vernon 1988).

Congress has placed upon the Secretary the responsibility of interpreting and administering the complex package of legislation dealing with health and welfare which is embodied in the Social Security Act (the "Act"). Section 205(a) of the Act provides:

> The Secretary shall have full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions, and shall adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits hereunder.

42 U.S.C. § 405(a). The Secretary must balance difficult and sensitive interests in making decisions which affect benefits and impact upon the lives of claimants and beneficiaries, both young and old. Conceding that the regulation relied upon by the Secretary "obviously serves an interest in administrative efficiency," I would add that it serves important interests of logical consistency, certainty, and prompt determination of rights, not only of those who claim to be illegitimate children, but also of those who are legitimate family members of deceased wage earners.

Section 216(h)(2)(A) of the Act states in relevant part:

> In determining whether an applicant is the child ... of a fully or currently insured individual ..., the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property ... by the courts of the State in which he was domiciled at the time of his death....

42 U.S.C. § 416(h)(2)(A). In making a determination that Amanda DeSonier was not the child of Russell Phillis, the ALJ applied 20 C.F.R. § 404.354 which provides in pertinent part:

> To decide your relationship to the insured ... [i]f the insured is deceased, we look to the *laws that were in effect at the time the insured worker died in the State where the insured had his or her permanent home....* The State laws we use are the ones the courts would use to decide whether you could inherit a child's share of the insured's personal

property if he or she were to die without leaving a will.

20 C.F.R. § 404.354(b) (1988) (emphasis added). In accordance with the regulation at issue, the Secretary applied the laws of Texas in effect at the time of Mr. Phillis' death to determine that Amanda DeSonier was not entitled to benefits.[1] The Secretary also considered whether Amanda could inherit under the laws of Texas in effect at the time of the filing of her claim.

Retroactive application of Texas law would not usually be mandated. The law of the domiciliary state in effect at time of death generally controls who inherits and to what extent there is inheritance. Statutes of descent and distribution typically are not to be construed retrospectively unless such construction is plainly intended by the legislature. *See generally* 26A C.J.S. *Descent & Distribution* § 6. The interpretation given by the Secretary in this case was in accord with the usual rule of inheritance and descent. *See Schaefer ex rel. Schaefer v. Heckler,* 792 F.2d 81, 85 (7th Cir.1986).

After Phillis' death and almost a year after the filing of the claim in September of 1986, Texas amended its law of intestate succession adding an additional method by which illegitimates can inherit from their father.[2] *See* Tex.Prob.Code Ann. § 42(b) (Vernon Supp.1988). The real issue in this case is whether the ALJ should have considered the 1987 amendment in determining plaintiff's right to inherit. Prior to the 1987 amendment, Texas provided three ways for illegitimate children to inherit from their father. *See Henson v. Jarmon,* 758 S.W.2d 368, 370 (Tex.Ct.App.1988).

In *Henson,* the Texas Court of Appeals discussed the impact of the Supreme Court's decisions in *Trimble v. Gordon,* 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977)[3], and in *Reed v. Campbell,* 476 U.S. 852, 106 S.Ct. 2234, 90 L.Ed.2d 858 (1986), on the retroactive application of the 1987 amendment to the Texas probate code. The court stated that *Reed* "held that the illegitimate's claim to a share in her father's estate was protected by the full applicability of its earlier decision in *Trimble,* regardless of when the decedent died or when the illegitimate's claim was filed." *Henson,* 758 S.W.2d at 370. The court in *Henson,* therefore, held that *Reed* mandated the retrospective application of the 1987 amendment, which provides a fourth way by which an illegitimate can inherit from his or her father.

Even if we were to apply the principle of *Cox v. Schweiker,* 684 F.2d 310 (5th Cir. 1982), it would not necessarily avail plaintiff here a different result. *Cox* set the law of the state at the time of *application* on behalf of the illegitimate as the appropriate controlling time. This court, at least by dictum, may have adopted this standard in *Childress v. Secretary, H.H.S.,* 679 F.2d 623 (6th Cir.1982); however, the *Cox* rationale has been rejected in *Morales v. Bowen,* 833 F.2d 481, 485 (3d Cir.1987), which applied an equivalent standard to the one adopted by the Secretary in regulation 20 C.F.R. § 404.354(b). *See also Gonzales v. Harris,* 514 F.Supp. 995, 996 (E.D.Cal. 1981); *Allen v. Califano,* 452 F.Supp. 205, 209 (D.Md.1978). I agree with the principles expressed in *Morales,*[4] which did not reject the validity and reasonableness of the Secretary's interpretation of the applicable law.

I would REMAND for the express purpose of affording the Secretary an opportunity to consider whether plaintiff has made this fourth showing as mandated by the decision of the Supreme Court in *Reed.* I would also AFFIRM the action of the Sec-

---

1. I agree with the Secretary's decision that under Ohio law Denise DeSonier, Amanda's mother, was not the common law wife of Phillis, nor was there any valid union recognized by the laws of Ohio where they resided together for some period of time.

2. The amended statute provides that a child can prove his paternal heirship by demonstrating that he or she is the biological child of the deceased.

3. *Henson* noted that the 1977 *Trimble* decision determined only that the "1976 version of section 42 of the Texas Probate Code was unconstitutional." 758 S.W.2d at 370.

4. I do not understand *Jones v. Heckler,* 712 F.2d 924 (4th Cir.1983) to be contrary to *Morales.*

retary and the district court. I also would confirm that regulation § 404.354(b) (1988) is in the usual case, absent the peculiar circumstances evident here, a reasonable interpretation of the statute in controversy.