Lisa K. BARTON, Plaintiff,

v.

Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.

No. NA 89–115–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

March 29, 1991.

Decisional Law, and the Record of Proceedings before the Social Security Administration. The Court has reviewed the parties' pleadings and concludes that the same should be construed as cross-motions for summary judgment.

Whereupon the Court, having read the memoranda in support of and in opposition to the parties' respective summary judgment motions, and having examined the administrative record, and being duly advised, hereby concludes that the plaintiff's motion for oral argument should be denied, but that the plaintiff is entitled to summary judgment as a matter of law. Therefore, the plaintiff's motion for oral argument is DENIED, the plaintiff's motion for summary judgment is hereby GRANTED, and the defendant's motion for summary judgment is hereby DENIED.

IT IS SO ORDERED.

Gordon D. Ingle, Winkler, Fifer & Ingle, New Albany, Ind., for plaintiff.

Sue Hendricks Bailey, Asst. U.S. Atty., U.S. Attorney's Office, Indianapolis, Ind., for defendant.

### ENTRY GRANTING SUMMARY JUDGMENT

NOLAND, District Judge.

This cause is before the Court on the plaintiff's Complaint, the defendant's Answer, the plaintiff's "Memorandum in Support of Ryan L. Harper's Status as a "Child" Entitled to Social Security Benefits Through his Deceased Father" and accompanying Motion for Oral Argument, the defendant's Memorandum in Support of the Secretary's Decision, the plaintiff's Reply Memorandum, the plaintiff's Notice of New

### MEMORANDUM ENTRY

#### I. *Background*

The facts giving rise to this cause of action are not in dispute. On August 25, 1985, wage earner James Leslie Harper died in Floyds Knobs, Indiana, as a result of injuries he sustained in a motorcycle accident. A.R. 31, 38, 76. On January 22, 1986, less than five (5) months after his fatal accident, the plaintiff's mother, Lisa Kay Barton, filed a Petition for Declaration of Paternity in the Clark County (Indiana) Superior Court. A.R. 70, 74. The plaintiff's mother sought to establish that the plaintiff, her unborn child Ryan, was the wage earner's son. A.R. 74. Less than one month later, on February 7, 1986, the plaintiff was born at the Humana Hospital in Louisville, Kentucky. A.R. 22, 28, 33, 35, 51–52 [1].

---

1. The plaintiff's "hospital birth certificate", as distinguished from his "actual birth certificate" (i.e., the vital record of his birth which is maintained by the State of Kentucky), states that the plaintiff's father is James Leslie Harper (the wage earner). A.R. 52. However, the plaintiff's mother reported to the Social Security Administration that the wage earner had not filed a written acknowledgment of paternity with anyone and that his name was placed on the birth certificate by the hospital based upon informa-

tion she had supplied. A.R. 57. Barton admitted that while a court order or written acknowledgment would have been necessary to place the wage earner's name on the back of the plaintiff's "actual birth certificate", neither was obtained. A.R. 57.

The plaintiff's "hospital birth certificate" obviously did not constitute acceptable proof of paternity. *Parker for Lamon v. Sullivan*, 891 F.2d 185, 190 (7th Cir.1989) (*citing Garcia on Behalf of Garcia v. Sullivan*, 874 F.2d 1006, 1008 (5th

Lisa Barton never married the wage earner. A.R. 32, 57. She did not reside with him, or receive financial support from him, prior to his death. A.R. 32, 57. The wage earner did not acknowledge the plaintiff's paternity in writing. A.R. 58, 68.

On February 3, 1987, the plaintiff's mother, Lisa Barton, filed an application for children's benefits on the plaintiff's behalf.[2] A.R. 8, 28–32. This initial application was denied on April 8, 1987, and was not appealed. A.R. 8, 34.

On December 21, 1987, the Clark Superior Court issued an Order finding that the wage earner was the plaintiff's natural father, and that he, or rather his estate, would be responsible for a reasonable amount of the plaintiff's support. A.R. 62, 75. On December 6, 1988, the Clark Superior Court issued a *Nunc Pro Tunc* Order stating that the plaintiff was entitled to all inheritance rights and privileges under I.C. § 29–1–1–1, *et seq.*, as the wage earner's heir. A.R. 78.

On February 29, 1988, the plaintiff's mother filed a new application for benefits on the plaintiff's behalf. A.R. 8, 35–39. A hearing was held on the plaintiff's second application on November 29, 1988, during which the plaintiff's counsel raised the issue of plaintiff's ability to inherit through the deceased wage earner under Indiana law. A.R. 7, 20, 22. The plaintiff appeared at the hearing in person and by his counsel. A.R. 7, 22. Although the plaintiff chose not to call any witnesses, documentary evidence was submitted and the ALJ heard oral argument on the plaintiff's application. A.R. 7, 22–27. The wage earner's mother's (Leslie's mother May L.

Harper) statement of February 3, 1987, which noted that the wage earner had stated to her on several occasions before he died that Lisa Barton was pregnant with his child, was admitted into evidence during the hearing. A.R. 55–56.

On December 30, 1988, the Administrative Law Judge issued his decision denying the plaintiff's application for benefits. A.R. 7–13. The ALJ declined to apply the doctrine of *res judicata* because the plaintiff's second application for benefits raised a number of issues which were not previously considered (including the 1987 amendment to Indiana's intestacy statute which is at issue in this case). A.R. 8. The ALJ ultimately concluded that the plaintiff was not entitled to surviving children's insurance benefits under the Social Security Act because he was not the deceased wage earner's "child" as that term is defined under the Social Security Act. A.R. 7–13. Before analyzing the plaintiff's case under the 1953 and 1987 versions of I.C. § 29–1–2–7, the ALJ stated as follows:

> While it is the opinion of the Administrative Law Judge that the claimant would not have the status of a child of the wage earner under the intestacy laws of the State of Indiana either at the time of the wage earners's death *or under subsequent amendments to those statutes*, the fact that the prior law is controlling in this case leaves no doubt as to the issue.

A.R. 9 (Emphasis added).

On May 3, 1989, two (2) days *after* the effective date of the 1989 amendment, the Appeals Council denied the plaintiff's request for review of the ALJ's decision. A.R. 3–4.[3] The Appeals Council stated that

---

Cir.1989) (a birth certificate which is not based upon *either* the putative father's acknowledgment of paternity or a statement that he is the father by one authorized by him to acknowledge his paternity, will not constitute evidence of paternity)).

**2.** As explained in *Mathews v. Lucas*, 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976), surviving child's insurance benefits under the Social Security Act are intended to replace income lost as a result of a wage earner who provided support to a dependent child. "The statute errs on the side of generosity—many who can meet the requirements will not have been dependent

on the insured person, yet anyone actually dependent but who cannot meet the other standards still can qualify by establishing that the insured person contributed to their support". *Trammell on Behalf of Trammell v. Bowen*, 819 F.2d 167, 169 (7th Cir.1987).

**3.** The decision of the Appeals Council constitutes the final decision of the Secretary. *Steward v. Bowen*, 858 F.2d 1295, 1296, n. 1 (7th Cir.1988). Thus, as a reviewing court this Court focuses its review upon the Appeals Council's decision rather than the ALJ's. *Bauzo v. Bowen*, 803 F.2d 917, 921 (7th Cir.1986).

the record did not support the plaintiff's argument that § 3 of Indiana Public Law 50–1987 (i.e., the 1987 amendment to I.C. § 29–1–2–7) should be applied retroactively. A.R. 3. The Appeals Council did not mention the 1989 amendment in its decision despite the fact that the amendment's effective date preceded the date of its decision. A.R. 3–4.

On July 7, 1989, the plaintiff's mother filed her Complaint seeking judicial review of the Secretary's final decision that her son is not entitled to benefits under the Act.

## II. *Discussion*

The issue in this case is whether the plaintiff, a child who has obtained a posthumous judgment of paternity in an Indiana Court, may obtain social security benefits under 42 U.S.C. § 416(h)(2)(A). Resolution of this issue requires an understanding of (1) the precise relationship between the Social Security Act's provisions regarding children's benefits and the Indiana statute regarding an illegitimate child's rights with respect to intestate succession, and (2) the history of the later statute (i.e., how the statute has evolved through its the amendment process).

### A. Social Security Provision

A child may obtain child's insurance benefits under the Social Security Act only if he or she meets one of the alternative "tests" of dependency which is set out in 42 U.S.C. § 416. As Judge Easterbrook explained in *Trammell on Behalf of Trammell v. Bowen*, 819 F.2d at 168:

> The statute [ (42 U.S.C. § 416) ] offers a person a multitude of ways to become a statutory "child". The most common is for the mother to be—or be married to—the covered wage earner. 42 U.S.C. § 402(d)(3)(A). A child adopted by the insured person is treated the same as his own child. *Ibid.* Methods other than legitimate birth and adoption include:

> —**Eligibility to inherit property under intestate succession laws, 42 U.S.C. § 416(h)(2)(A)**, see *Schaefer v. Heckler*, 792 F.2d 81 (7th Cir.1986)

> —Common law marriage of one's parents, defined as a technically deficient marriage ceremony, 42 U.S.C. § 416(h)(2)(B)

> —The insured person's written acknowledgment of parentage, 42 U.S.C. § 416(h)(3)(C)(i)(I)

> —A court order requiring the insured person "to contribute to the support of the applicant because the applicant was his son or daughter", 42 U.S.C. § 416(h)(3)(C)(i)(III)

> —A determination by the Secretary that the insured person was the parent of and "was living with ... the applicant [for benefits] at the time such insured individual died", 42 U.S.C. § 416(h)(3)(C)(ii)

> —A determination by the Secretary that the insured person was the parent of and was "contributing to the support of the applicant" for benefits when the insured person died, *ibid.;* see also *Dubinski v. Bowen*, 808 F.2d 611 (7th Cir.1986)

> —A decree by a court that the insured person is the "father of the applicant", provided that "such ... court decree ... was made before the death of such insured individual", 42 U.S.C. § 416(h)(3)(C)(i)(II)

*Id.* (Emphasis added).

Citing 42 U.S.C. § 416(h)(2)(A), the plaintiff contends that he is entitled to child's insurance benefits under the second "test" described in *Trammell,* i.e., that he is eligible to inherit property under Indiana's intestate succession law.

### B. Indiana's Intestate Succession Law

The law with respect to the inheritance rights of illegitimates has undergone dramatic change in Indiana since common law:

> At common law, a child born out of wedlock had no inheritable blood. The statutes antedating I.C. 29–1–2–7 were designed to ameliorate this condition. *Wilson v. Bass* (1918), 70 Ind.App. 116, 120, 118 N.E. 379, 380, *trans. denied.* Illegitimate children acknowledged during their father[s'] lifetime were permitted to inherit his estate. See, e.g., Acts

1901 p. 288 (Burns' Ann.Stat. § 2630a 1901).

In 1953, with enactment of the probate code, the statutory preconditions for inheritance changed. An illegitimate child could inherit "as if he were the legitimate child of the father, if but only if, (1) the paternity of such child has been established by law, during the father's lifetime, or (2) if the putative father marries the mother of the child and acknowledges the child to be his own."

*Matter of Estate of Edwards*, 562 N.E.2d 763, 766 (Ind.App.1990).

At the time of the wage earner's death (August 25, 1985), the 1953 version of Indiana's statute governing the inheritance rights of illegitimate children (i.e., the version discussed above) was in force:

(b) For the purpose of inheritance to, through and from an illegitimate child, such child shall be treated the same as if he were the legitimate child of his father, if but only if,

(1) **the paternity of such child has been established by law, during the father's lifetime; or**

(2) if the putative father marries the mother of the child and acknowledges the child to be his own.

I.C. § 29–1–2–7(b) (1953) (Emphasis added). In 1987, prior to the filing of the plaintiff's second application for benefits (the application which is presently at issue), the Indiana General Assembly amended this statute. In essence, the amended version of the statute provided that an illegitimate child had a slightly longer period of time (5 months) in which to prevail in his or her paternity action if he or she were to inherit on the paternal side (and if he or she were to prevail in his or her effort to obtain social security benefits). The amended statute provided as follows:

(b) For the purpose of inheritance (on the paternal side) to, through, and from a child born out of wedlock, the child shall be treated as if the child's father were married to the child's mother at the time of the child's birth, if:

(1) **paternity of the child has been established by law:**

(A) during the father's lifetime; or

(B) **within (5) months after the father's death[.]**

(2) the putative father marries the mother of the child and acknowledges the child to be his own.

I.C. § 29–1–2–7(b) (1987) (Emphasis added).

On May 1, 1989, two (2) days before the Appeals Council denied the plaintiff's request for review of the ALJ's decision, the Indiana General Assembly revisited the subject of illegitimates' inheritance rights, once again amending the statute. *See* P.L. 261–1989, § 1, *Indiana Acts*, pp. 1890–1891. In its present form (i.e., as amended in 1989), the statute provides as follows:

(b) For the purpose of inheritance (on the paternal side) to, through, and from a child born out of wedlock, the child shall be treated as if the child's father were married to the child's mother at the time of the child's birth, if:

(1) **the paternity of the child has been established by law in a cause of action that is filed:**

(A) during the father's lifetime; or

(B) **within five (5) months after the father's death[.]**

(2) the putative father marries the mother of the child and acknowledges the child to be his own.

I.C. § 29–1–2–7(b) (1989) (Emphasis added). The 1989 amendment to I.C. § 29–1–2–7(b), which the Secretary refers to as a mere "technical correction to the 1987 statute", Memorandum in Support of the Secretary's Decision (hereinafter "Defendant's Memorandum"), p. 8, effectively cured the problem encountered by "children who file within the period of limitations for support but whose cases are not concluded within five months of the father's death". *Matter of Estate of Edwards*, 562 N.E.2d at 767. The statute no longer sets an outside limit on when a child must obtain a judgment of paternity if he or she is to take a share of their putative father's estate. Instead, it now requires only that the petition be *filed* within five (5) months of the putative father's death.

As recently noted by the Indiana Court of Appeals, the 1989 amending legislation contained additional provisions which must also be considered in resolving the question of whether the 1989 amendment is to be given retroactive effect:

SECTION 4. A determination of paternity or related order that:

(1) was issued before the effective date of this act;

(2) was issued five (5) or more months after the father's death;

(3) resulted from a civil proceeding for the establishment of paternity that was filed in accordance with IC 31-6-6.1-6:

(A) during the father's lifetime; or

(B) within five (5) months after the father's death;

is legalized and validated to the same extent as if the determination of paternity or related order had been issued during the father's lifetime or within five (5) months after the father's death.

SECTION 5. Because an emergency exists, this act takes effect upon passage.

See P.L. 261-1989, §§ 4-5, *Indiana Acts*, p. 1892.

On November 20, 1990, the Indiana Court of Appeals decided, in a case of first impression in the State of Indiana, that the 1989 amendment must be given retroactive effect. *Matter of Estate of Edwards*, 562 N.E.2d at 765-767. The Court's conclusion was clearly stated in its opinion:

Having looked to the statute and [the 1989] amendment, the circumstances under which they were enacted, the old law on the subject, and the evils and mischiefs to be remedied, we agree with the trial court that the legislature intended the amendment to apply retroactively to effectuate its original intent.

*Id.*, 562 N.E.2d at 766. While the *Edwards* Court acknowledged that retroactive application of a statute is "the exception rather than the rule", it found that the 1989 amendment overcame the presumption in favor of prospective application:

The 1989 amendment plainly was intended to ensure the inheritance statute was not constitutionally defective and to reflect the legislature's original intent to permit posthumous determinations of heirship. The statutory amendment must be applied retroactively to accomplish these purposes.

*Id.*, 562 N.E.2d at 767.

## C. The Plaintiff's Entitlement to Benefits

Given the history of recent amendments to I.C. § 29-1-2-7(b), the question arises as to which version of the statute should be applied in the present case (i.e., which version supplies the answer to the question which is posed by § 416(h)(2)(A)). While this might appear an issue which would occasion little debate, the circuit courts of appeals have taken different positions on the same. *DeSonier v. Sullivan*, 906 F.2d 228, 232 (6th Cir.1990). The Sixth Circuit explained as much in *DeSonier:*

The federal courts of appeals do not agree on what version of state intestacy law to apply in determining an applicant's status under § 416(h)(2)(A), i.e., whether to apply the state intestacy law in effect at the time the wage earner died, at the time the applicant filed for benefits, or at the time the Secretary reached a decision.

*Id.*[4]

In discussing the split between the circuits and the variance in the positions tak-

---

**4.** The *DeSonier* Court noted the variance in the approaches taken by the other circuits: Third Circuit (mixed approach depending upon what state intestacy law required and whether it had changed between the time of the wage earner's death and "the conclusion of the Social Security survivor's benefits process"), *Adens for Green v. Schweiker*, 773 F.2d 545, 547-548 (3rd Cir.1985), and *Morales on Behalf of Morales v. Bowen*, 833 F.2d 481, 485 (3rd Cir.1987); Fourth Circuit (applied state intestacy statutes which took ef-

fect years after childrens' applications filed), *Jones v. Heckler*, 712 F.2d 924, 926 (4th Cir. 1983), (applied West Virginia law, on remand from Supreme Court), and *Jones v. Heckler*, 754 F.2d 519, 520 (4th Cir.1985) (applied Mississippi law, on remand from Supreme Court); Fifth and Eleventh Circuits (time of application); *Cox v. Schweiker*, 684 F.2d 310, 318 (5th Cir.1982), and *Hart By and Through Morse v. Bowen*, 802 F.2d 1334, 1336, n. 1 (11th Cir.1986); Sixth and Ninth Circuits (time of ALJ's decision), *DeSoni-*

en by different courts, the *DeSonier* Court stated that in *Schaefer on Behalf of Schaefer v. Heckler*, 792 F.2d 81 (7th Cir.1986), a divided panel of the Seventh Circuit had apparently endorsed the "time of death" approach. *DeSonier v. Sullivan*, 906 F.2d at 232. In his Memorandum, the Secretary cites *Schaefer* for the proposition that the Seventh Circuit has decided the issue of which law to apply in a manner which is consistent with both the Secretary's interpretation (as reflected in 20 C.F.R. § 404.‑354(b) (1985)), and the majority rule in most states (including Indiana) that the law in effect at the time of an intestate's death controls the disposition of his property. Defendant's Memorandum, pp. 4–9.[5] The Court finds, however, that the Secretary's reliance upon the Seventh Circuit's decision in *Schaefer* is misplaced. While the *Schaefer* majority did hold that the law to be examined in the case before it was the intestacy law in effect in Wisconsin at the time of the wage earner's death, the Court's holding does not compel affirmance of the Secretary's decision in the present case. *Schaefer*, 792 F.2d at 85.

The *Schaefer* Court's holding was based upon its conclusion that there was no evidence that the Wisconsin legislature had intended its retroactive amendment to the Wisconsin paternity statute, which for the first time allowed illegitimate children to petition for posthumous determinations of paternity, to apply in the context of intestate succession. *Schaefer*, 792 F.2d at 84–85. The Court stated that it agreed with the district court that "had the Wisconsin legislature wanted to apply [its amendment to the Wisconsin paternity statute] to affect intestate succession under [the Wisconsin statute governing the distribution of personal property] retroactively it would have made its intentions clear". *Id.*, 792 F.2d at 85. This fact distinguishes *Schaefer* from the present case. The *Schaefer* Court acknowledged that the Wisconsin Supreme Court had not spoken on this precise issue but chose not to certify the question to the Wisconsin Supreme Court as it found the issue could be resolved by reference to Wisconsin's statutes and caselaw. *Schaefer*, at 84, n. 3.

This Court concludes that *Schaefer* does not stand for the broad proposition that in this Circuit the Secretary must look to the state intestacy law in effect at the time of the wage earner's death in order to determine whether the child is entitled to benefits, without regard for whether the state legislature has indicated its desire that an amendment to its statute must be given retroactive effect.

 In the present case, the Court is presented with a clear and unambiguous amendment to Indiana's intestacy statute and is also aided by a recent well-reasoned opinion of the Indiana Court of Appeals which construed the amendment and resolved the retroactivity issue. *Matter of Estate of Edwards*, 562 N.E.2d at 765–767.[6] The Court concludes that because

---

er, 906 F.2d at 233–234, and *Owens By and Through Owens v. Schweiker*, 692 F.2d 80, 82 (9th Cir.1982).

**5.** While the *Schaefer* Court stated that its decision was "consistent" with "the Secretary's longstanding policy that the determination under 42 U.S.C. § 416(h)(2)(A) should be made with reference to the intestacy laws in effect when the insured wage earner died", *Schaefer*, 792 F.2d at 85, n. 5, it did not find that its decision was compelled by the Secretary's policy. More importantly, as the Third Circuit explained in *Morales on Behalf of Morales v. Bowen*, 833 F.2d at 485, the Secretary's "policy", which is now codified at 20 C.F.R. § 404.354(b) (1985), also provides that "[t]he State laws [the Secretary] use[s] are the ones the courts would use to decide whether you could inherit a child's share of the insured's personal property if he or she were to

die without leaving a will". As noted in this Entry, it is clear after *Edwards* that the Indiana courts would apply the 1989 version of I.C. § 29–1–2–7(b) in deciding whether a child could inherit a share of their father's estate.

**6.** While *Edwards* was decided by the Indiana Court of Appeals, rather than the Indiana Supreme Court, it nevertheless states the law of the State of Indiana. As the Seventh Circuit recently explained in *Roberson v. Bethlehem Steel Corporation*, 912 F.2d 184, 186, n. 1 (7th Cir.1990), "unless [the federal Court] ha[s] a good reason to believe that the state's highest court would reject a decision by an intermediate court, [the federal Court] must treat that decision as authoritatively stating the law of the state". *Id.* (quoting *Tippecanoe Beverages, Inc. v. S.A. El Aguila Brewing Co.*, 833 F.2d 633, 638–639 (7th Cir.1987)).

the 1989 amendment is given retroactive effect in the Indiana courts, the 1989 amendment supplies the law to be considered in determining whether the plaintiff is entitled to inherit through the deceased wage earner and therefore, by operation of 42 U.S.C. § 416(h)(2)(A), whether he is entitled to Social Security benefits. In amending the statute in 1989, the Indiana General Assembly was supplying, albeit after the fact, the law which "was in effect at the time of the wage earner's death" at least in the present case and in those child's benefits cases which were still pending.

The Secretary's unexplained assertion that the Indiana General Assembly "appears to have made the 1989 change retroactive *to July 1, 1987,* the effective date of the provision it amended" (i.e., and not before that date), Defendant's Memorandum, p. 8 (Emphasis added), is contrary to the express language of § 4 of the amending legislation. Reading § 4 of the amending legislation in conjunction with the 1989 amendment, the Court discerns no evidence or indication that the General Assembly intended to limit the statute's retroactivity to the effective date of its predecessor statute (the 1987 version of the statute). To the contrary, while § 4 clearly indicates the General Assembly's intent to give retroactive effect to the 1989 amendment, it contains no express limitation on the amendment's retroactivity.

Section 4 provides that a paternity order which satisfies its provisions (i.e., which was issued before its effective date and five (5) or more months after the father's death, which resulted from a proceeding filed in accordance with I.C. § 31-6-6.1-6, and which resulted from a proceeding which was filed during the father's lifetime or within five (5) months after his death) is "legalized and validated **to the same extent as if the determination of paternity or related order had been issued during the father's lifetime or within five (5) months after the father's death**" (Emphasis added). Keying on the fact that § 4 "validates" a paternity order which falls within its terms "to the same extent as if [it had

been issued] within five (5) months after the father's death", the defendant apparently suggests that by referring to the five month period first added to I.C. § 29-1-2-7(b) in 1987, the Indiana General Assembly must have meant to limit the retroactive effect of the statute to the effective date of the 1987 statute. The problem with the Secretary's argument is that it ignores the fact that § 4's "to the same extent" language also "validates" a paternity order which falls within its terms "to the same extent as if [it had been issued] during the father's lifetime" (i.e., a paternity order which is *filed* within five (5) months of the father's death, is "validated" because it would have satisfied the 1953 version of the statute).

In the present case, unlike *Schaefer,* the state legislature (the Indiana General Assembly) made clear its intention to give retroactive effect to its 1989 amendment to I.C. § 29-1-2-7(b). In this respect, the Court agrees with the conclusion reached by the Indiana Court of Appeals in *Edwards.* In *Edwards,* the putative father died during the period of time between the 1987 and 1989 amendments. Significantly, while the *Edwards* Court stated that the statute to be applied in the case before it was the 1987 version of I.C. § 29-1-2-7(b), because "the rights of heirs are determined by the statutes of descent in force at the time of the intestate's death", it nevertheless agreed with (and therefore affirmed) the trial court's conclusion that the legislature had intended the 1989 amendment to apply retroactively. *Edwards,* 562 N.E.2d at 765-766 (Citations omitted).

While the 1989 amendment relates back to the time of the wage earner's death, and thus supplies the applicable state intestacy law, it should be noted that logic does not compel the conclusion that the law to be applied should be the law in effect at the time of the wage earner's death. As the Court noted in *Owens, By and Through Owens v. Schweiker,* 692 F.2d at 83, n. 1, grammatical analysis of § 416(h)(2)(A) and sound policy considerations actually mitigate against such a construction. In *Owens,* the Court found persuasive Judge Morgan's grammatical analysis in *Cope-*

*land v. Califano,* No. 78–1004, at 5 (C.D.Ill. June 20, 1979) (Unpublished opinion):

> Were the applicable state law that which existed at the time of the decedent's death, the statute would require a prepositional phrase to that effect, or a change in the verb tense to present perfect subjunctive, i.e., "such law as *would have been applied.*" That the courts have already applied a different law in distributing the decedent's estate is of no moment, for the statute looks not to the chronology of death, probate, and application for survivorship benefits, but to the state law as it exists at the time of the Secretary's determination.

*Owens, By and Through Owens v. Schweiker,* 692 F.2d at 82 (Emphasis in original) (*quoting Copeland v. Califano,* at 5); *Accord Carter for Carter v. Secretary,* 625 F.Supp. 281, 287 (E.D.Mich.1985). The *Owens* Court explained the rationale underlying its conclusion:

> The Secretary points out that the law of intestate succession in effect on the date of death usually applies for probate purposes. The reason for this, however, is the need to fix the rights of all heirs in the intestate's estate. There is no corresponding need to fix the rights of a Social Security claimant immediately upon the death of the wage earner. *See Cooper v. Harris,* 499 F.Supp. [266,] 267 [ (N.D.Ill.1980) ].

*Id. See also McBride on Behalf of McBride v. Heckler,* 619 F.Supp. 1554, 1560 (D.C.N.J.1985) (Court applied New Jersey law in effect at time of the plaintiff's application noting that it was "not intervening in a filiation proceeding, but [wa]s reviewing a case of entitlement to Federal benefits".).

The decision to remand a case such as this, either with instructions to award benefits or in order to permit reconsideration (and application) of a retroactive amendment to a state law of intestacy (where the amended state law would have the effect of changing both the child's right to inherit and his or her entitlement to Social Security benefits), is not without precedential

support. In addition to several of the cases which are cited throughout this Entry, the Supreme Court has also indicated that a remand under such circumstances is appropriate. In *Jones v. Heckler,* 460 U.S. 1077, 103 S.Ct. 1763, 76 L.Ed.2d 339 (1983), the United States Supreme Court was presented with a challenge to the constitutionality of two state intestacy statutes which had been examined in determining whether certain children were entitled to inherit under state law (which of course determined whether they were entitled to Social Security benefits under federal law). With respect to that portion of the case which required an answer based upon Mississippi law, the Supreme Court remanded to the Fourth Circuit "for further consideration in light of Miss.Code Ann. Section 91–1–15 (Cum.Supp.1982)", *id.,* apparently following the suggestion of the dissenter in *Jones* that the case be remanded to the Secretary for reconsideration because of an amendment to the State statute which appeared to be retroactive. *See Jones v. Schweiker,* 668 F.2d 755, 765, n. 10 (4th Cir.1981) (Bryan, J. dissenting). While the Fourth Circuit, on remand, held the Mississippi portion of the case in abeyance pending the Mississippi Supreme Court's resolution of a certified question, *Jones v. Heckler,* 712 F.2d 924 (4th Cir.1983), the Mississippi legislature amended its intestacy statute and the Court ultimately ordered the Secretary to award benefits to the petitioners in accordance with the amended statute. *Jones v. Heckler,* 754 F.2d 519, 520 (4th Cir.1985).

With respect to that portion of the *Jones* case which turned on West Virginia law, the Supreme Court remanded to the Fourth Circuit for further consideration in light of a change in that State's law which had the effect of permitting the petitioner to take her share of the wage earner's estate (which of course had the further effect of qualifying her for benefits under 42 U.S.C. § 416(h)(2)(A)). *Id.,* 460 U.S. 1077, 103 S.Ct. 1763.

## CONCLUSION

For the foregoing reasons, the Court concludes that the plaintiff was the deceased wage earner's "child" under Indiana intes-

tate law, and hence, under 42 U.S.C. § 416(h)(2)(A).[7] He therefore was, and is, entitled to child's insurance benefits under the Social Security Act. Accordingly, the Secretary's decision denying his application for benefits must be REVERSED and this cause must be REMANDED to the Secretary with instructions to award the plaintiff benefits in accordance with the Act and the Secretary's regulations.

---

**7.** Because the Court has resolved this case on the basis of statutory interpretation, it need not resolve the issue of the constitutionality of the pre–1989 Indiana intestate statute and the question of whether the Court would be bound to apply the statute even if it were unconstitutional. *Owens, By and Through Owens v. Schweiker,* 692 F.2d at 83, n. 1 ("Because we hold that the Secretary looked to the wrong law, it is not necessary for us to consider plaintiff's alternative argument that the intestacy law applied below is unconstitutional"); *Handley, By and Through Herron v. Schweiker,* 697 F.2d 999, 1006 (11th Cir.1983) ("We make no attempt here to decide the minimal time after the birth of an illegitimate child within which a paternity proceeding must be permitted. It is sufficient to state that, under *Mills* [*Habluetzel,* 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed.2d 770] [ (1982) ], a time period of less than one year is insufficient as a matter of law."); *See, Jones v. Schweiker: Illegitimate Children and Social Security Benefits,* 16 Ind.L.Rev. 887, 901–909 (1983).